**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Martin STERN, Defendant-Appellant.**

**No. 74–3176.**

United States Court of Appeals,
Ninth Circuit.

June 26, 1975.

Rehearing Denied Aug. 29, 1975.

---

Theodore A. Cohen (argued), Los Angeles, Cal., for defendant-appellant.

Robert E. Lindsay (argued), Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and McNICHOLS, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Stern was convicted after a trial to the court of conspiring to obstruct the Internal Revenue Service, attempting to evade personal income tax, and willfully failing to file a return. His motion for new trial was denied. We affirm the judgment and the order denying a new trial.

### APPELLANT'S CONTENTIONS

(1) His trial counsel was ineffective and gave inadequate representation in that he failed to investigate Stern's psychiatric history;

(2) Government counsel was guilty of misconduct in failing to advise the court of Stern's psychological problems and in failing to request the court to order a psychiatric examination to determine appellant's competence to stand trial; and

(3) The court's post trial appointment of a psychiatrist and the doctor's examination of Stern were irrelevant to the claim of incompetent counsel, and the court improperly received in evidence the report of examination.

### EVIDENCE TO SUPPORT CONVICTION

Stern personally waived his right to a jury trial. The court heard evidence that Stern, a former IRS agent, started a business in 1970 to bootleg tape recordings of musical hits. Orders were solicited by telephone, the business was run on a cash basis and a bank account was kept under a fictitious name. The 20 to 50 employees were paid in cash, did not

* Of the District of Idaho.

complete tax withholding forms, were given no year-end statements of taxes withheld and were told that the taxes were "taken care of." A government expert computed Stern's taxable income for 1970 at $381,026.50, on which he owed a tax of $216,190.50. In his own defense, appellant attempted to put the blame on others and denied any intent to conceal matters from the IRS.

## MOTION FOR NEW TRIAL

He was found guilty on June 27, 1974 and moved for a new trial on July 10, supported by affidavits to show that he was incapable of forming the specific intent to commit the offenses or of adequately cooperating in his own defense. He was then represented by a second retained counsel. Stern's affidavit recited a history of treatment for psychological problems and it was supplemented by reports and letters from medical personnel who had treated him up to the time of trial. He said that his trial attorney, Bruce Hochman, knew that Stern had undergone psychotherapy since 1971 and had lived at Esalen Institute where he had therapy.

The government responded on July 16 with a request for a court-ordered psychiatric examination.

In August 1974, appellant had a third attorney and more affidavits were filed. A psychiatrist who first saw Stern after conviction and before sentencing characterized appellant as a schizophrenic unable to control his thoughts or make appropriate choices, and "lack(ing) substantial capacity to conform his conduct to the requirements of the law at the time of the alleged criminal conduct for which he was convicted."

A psychotherapist who had treated Stern for more than two years agreed with that assessment and concluded that during that time Stern's "mental state was such that his mind was incapable of

forming or possessing any specific intent to commit any (of the crimes charged)."

Another affidavit by Stern detailed his medical history and the fact that government counsel and Mr. Hochman were familiar with it. It alleged that Mr. Hochman and his assistants had commented on Stern's "eccentric behavior and lifestyle." [1] There was also reference to a meeting at which Stern's former attorney, Sturman, had told Mr. Hochman and government counsel of his reservations about Stern's mental stability.

Stern's affidavit charges Mr. Hochman with negligence and incompetence in failing to explore or investigate the existence of a potential "psychiatric defense" and points to the actual knowledge of the United States Attorney of the defendant's mental condition, which was not divulged to the trial judge.

When the motion for new trial was first heard, the district judge said of Mr. Hochman that he "is perhaps one of the best tax lawyers handling criminal cases in Los Angeles County," and therefore not likely to have overlooked a meritorious available defense. The court did grant the government's request, naming Dr. Pollack to examine Stern, and postponing a full evidentiary hearing pending receipt of the doctor's report.

At an adjourned hearing in October, the court accepted Stern's affidavits and supporting documents and, over objection, Dr. Pollack's report. The doctor had not appeared in court but the judge had put the hearing over for a week to allow the defense to arrange for Dr. Pollack's appearance. The court declined to order the government to produce him for cross-examination.

The Pollack report concluded that, although Stern had been suffering from schizophrenia and psychotic lapses for some years, he did not lack mental capacity at the time of the offense and

---

1. In a letter to Stern after the motion, Hochman admitted the knowledge attributed to him in Stern's first affidavit, and recalled that these facts concerning Stern's psychological problems had been mentioned to government counsel. He said, however, that he had considered Stern competent to assist in the preparation of his defense.

was able to consult and cooperate with defense counsel before and during trial. Mr. Hochman also testified as a government witness.[2]

He confirmed that he had received information on Stern's psychiatric background from the defendant and Mr. Sturman. He testified that he had discussed the possibility of a "diminished capacity" defense with Stern. He elected not to utilize such a defense because he "believed it would have been counter-productive." Instead, counsel determined to defend on the basis of Stern's alleged reliance on the professional advice of his former tax lawyer and accountant. That such a defense appeared to have merit, said Mr. Hochman, was demonstrated by the serious consideration given by the prosecutors in the case to recommending a misdemeanor disposition in return for a guilty plea.

A tax division prosecutor testified that he knew of Stern's psychiatric history prior to trial but that virtually all of his information came from defense counsel. When Mr. Hochman did not raise insanity as a defense, the government did not feel it necessary to request an examination of the defendant. Instead the prosecution and defense focused on the defense of reliance on professional advice in pretrial negotiations and considered Stern's mental problems only as a possible basis for mitigation of sentence.

In denying the motion for new trial, the court found there was no evidence that defendant was insane either at the time of the offense or at trial, or that he was unable to cooperate effectively in his own defense. It also found that defense counsel was aware of any mental condition, gave it reasonable consideration and rejected it for tactical reasons. No misconduct by government counsel was found, either.[3]

## ADEQUACY OF REPRESENTATION

■ This court will not reverse a judgment of conviction unless a defendant's representation has been so inadequate as to make his trial a farce, sham, or mockery of justice. *See, e. g., United States v. Martin,* 489 F.2d 674 (9th Cir. 1973); *United States v. Ortiz,* 488 F.2d 175 (9th Cir. 1973). We have declined to find such a "farce and mockery," where counsel's actions or omissions reflected tactical decisions, even if better tactics appear in retrospect to have been available. *United States v. Ortiz, supra,* at 177; *Mengarelli v. United States Marshal,* 476 F.2d 617, 619 (9th Cir. 1973); *Johnson v. Carven,* 432 F.2d 418, 419 (9th Cir. 1970).

■ Mr. Hochman had not raised an insanity defense because it "would have been counter-productive." The court agreed, noting that failure to pursue this

2. It is apparent that the district judge's characterization of Mr. Hochman, quoted in the body of this opinion, was apt. The substance of those remarks was confirmed by counsel at oral argument. A well-known law directory indicates that Mr. Hochman is a "Certified Specialist, Criminal and Taxation Law, 1973, California Board of Legal Specialization," a former Assistant United States Attorney, and author of many published articles on aspects of criminal tax matters. I Martindale-Hubbell Law Directory, 1004B, 1005B (1975 ed.).

3. The district court's ruling concluded:

"I am convinced that if there was evidence of a mental condition on the part of this defendant, that Mr. Hochman was aware of it and took those steps that an adequate and a competent defense lawyer would take in considering that as a defense, and if it was at all substantial, he not only was aware of it, but must have given it his consideration in his overall plans for arranging the defense

of this defendant. It could indeed be said to be a matter of tactics on the part of skilled counsel, and I don't think that the defendant should be allowed to come into court after he has been found guilty and have a second trial simply because he wants now to take another tactical step.

"There is no evidence that the defendant was legally insane at the time of the commission of the offense or at the time of the trial, or that he was incompetent to cooperate with his counsel at the trial.

"I have called upon my own recollection of the manner in which this case was tried, and I am convinced that the defendant was well aware of the nature of the proceedings, was competent to cooperate with his counsel, and did indeed cooperate with his counsel, and that he was given a fair trial. I see no misconduct on the part of the Government or of defense counsel."

R.T. 651–652.

issue "could indeed be said to be a matter of tactics on the part of skilled counsel."

This conclusion is supported by the record. Appellant's primary defense was his alleged good faith reliance on the advice of his tax attorney and accountant before engaging in the activity forming the basis for his subsequent indictment. *Compare Williamson v. United States,* 207 U.S. 425, 453, 28 S.Ct. 163, 52 L.Ed. 278 (1908).

While a defendant may plead inconsistent defenses, here it appears that competent counsel might well have concluded that it would not have been in Stern's best interest to do so. Reliance on the professional advice defense, which counsel had reasonable grounds to believe might prevail, would have lost much of its force if combined with an insanity defense. Even those courts which have held counsel to a stricter standard than that provided by the "farce and mockery" test have generally refused to fault retrospectively such tactical decisions and give a convicted defendant a second bite at the apple. *See, e. g., United States v. Edwards,* 488 F.2d 1154, 1164–65 (5th Cir. 1974).

Appellant cites *In re Saunders,* 2 Cal.3d 1033, 88 Cal.Rptr. 633, 472 P.2d 921 (1970), for the proposition that a conviction may be reversed despite compelling tactical reasons, where counsel has not made adequate inquiries into his client's prior mental condition. *Saunders* was apparently premised on the theory that no intelligent tactical decision can be made as to which defense should be raised until the strength of the insanity defense has been adequately investigated. *Saunders* is inapposite here. The district court here concluded that Mr. Hochman gave the substantiality of an insanity defense adequate "consideration in his overall plans for arranging the defense of this defendant."

We cannot say this finding was in error. There was substantial evidence from which the court could find that counsel reasonably concluded that further inquiry into a possible psychiatric defense would have been wasteful of his and the court's time and his client's money.[4] Appellant and his counsel conferred 15 to 20 times before trial and discussed the possibility of an insanity defense at least twice. After extensive negotiations over a possible disposition by guilty plea, counsel was undoubtedly aware of the nature of the government's case[5] and in a good position to evaluate its strength relative to both the reliance on professional advice defense and one based on insanity. This case is unlike *Brubaker v. Dickson,* 310 F.2d 30, 38 (9th Cir. 1962), where we found "[t]he defense actually tendered so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice."

■ Nor can we say that the court erred in finding no inadequacy of representation in counsel's failure to ask the court to determine Stern's capacity to stand trial and waive his right to trial by jury. Counsel considered Stern competent to assist in his own defense.[6] The trial judge, who had an opportunity to observe Stern throughout the trial concurred in this view, and found that appellant did in fact cooperate with his counsel.

---

**4.** *See* M. Fleming, *The Price of Perfect Justice; Brubaker v. Dickson,* 310 F.2d 30, 37 (9th Cir. 1962) ("Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.'" [Quoting MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960), modified 289 F.2d 928 (5th Cir. 1961).])

**5.** Evidence at trial supports the court's determination that Mr. Hochman's decision not to utilize such a defense was a reasonable and competent one. Testimony that appellant used fictitious names; used fictitious addresses, and reassured another not to worry about tax liability may well have convinced counsel that an insanity defense stood little chance of success.

**6.** *See* note 1 *supra.*

The court lauded Hochman as an experienced and highly capable attorney in criminal tax matters. Hence as regards Hochman's failure to request a court-ordered mental examination, the case before us is on all fours with *Battaglia v. United States*, 469 F.2d 686 (9th Cir. 1972), where we held:

The claim of ineffective assistance of counsel is frivolous. The record indicates that the two attorneys were able and experienced and were highly commended by the trial judge at the close of trial. The trial judge was aware of Battaglia's physical condition, and was constantly observing him. If the issue of Battaglia's incompetency had any merit, it would have been raised by counsel, or the court would have stopped the progress of the trial.

469 F.2d at 686.

## CONDUCT OF GOVERNMENT COUNSEL

■ Did government counsel fail in their duty to seek a psychiatric examination as soon as they had reason to doubt Stern's competence to understand the proceedings against him and cooperate in his own defense? It is contended that the court's retrospective determination that Stern was competent cannot obviate the government's misconduct in not seeking a resolution of this question before his waiver of jury trial and the trial itself.

The statute [18 U.S.C. § 4244] requires the United States Attorney to apply for such a judicial determination "[w]henever after arrest and prior to the imposition of sentence . . . [he has] reasonable cause to believe" a person charged with the offense may not be competent to stand trial. In this case the government did not have access to the record of appellant's mental history and current condition until the motion for new trial. Until then, the government's information except one letter[7]

was based on facts supplied by defense counsel. We cannot say that the government acted unreasonably or breached any statutory obligation by relying on Stern's well-respected retained counsel.

When Stern's motion and supporting affidavit were filed, the government moved for a court inquiry into mental competence as § 4244 would seem to require. *Cf. United States v. Irvin*, 450 F.2d 968 (9th Cir. 1971); *Morris v. United States*, 414 F.2d 258 (9th Cir. 1969); *Meador v. United States*, 332 F.2d 935 (9th Cir. 1964). It cannot be charged with misconduct for unreasonably delaying that determination.

Moreover, the court subsequently determined that Stern was competent to cooperate with his counsel at trial. While affidavits from a psychiatrist and a psychologist reached the opposite conclusion, resolution of this issue was for the court. The court's finding was based on substantial evidence, including the report of the court-appointed psychiatrist and the judge's own observations throughout the trial.

## ADMISSION OF DR. POLLACK'S REPORT

■ The final contention is that the report of Dr. Pollack's court-ordered psychiatrist examination was hearsay and should not have been admitted without an opportunity to cross-examine Dr. Pollack at the government's expense. Appellant admits that he did not utilize the time allowed by the court to arrange for the psychiatrist to appear for questioning but argues that it was the government's duty to produce Dr. Pollack for cross-examination.

This misconceives the nature of a court-ordered determination of competency to stand trial under 18 U.S.C. § 4244. Under that statute, the district judge may appoint a "qualified psychiatrist, who shall report to the court." The psychiatrist is expected to be neu-

---

7. The letter was from a psychotherapist who had treated Stern in weekly group therapy ses-
sions in 1971 and found him "extremely confused and anxiety ridden" at that time.

tral and detached, and to advise *both* parties of his findings. *See United States v. Edwards,* 488 F.2d at 1160–65. When there remains a doubt of a defendant's mental condition the report "may be submitted as evidence" at a hearing on the defendant's competency to stand trial.

The § 4244 report is primarily for the court's benefit, unlike psychiatric examinations conducted at the behest of a party. Though the government asked for it, the resulting report became the court's evidence.[8] Since Stern was not indigent, it was incumbent upon him, not the government, to bear the cost of challenging the report's conclusions, if he wanted to do so.

The judgment of conviction, and order denying appellant's new trial motion are affirmed.

---

8. *See generally* IX J. Wigmore, *Evidence* § 2484 (3d ed. 1940).