# BYRON JONES *v.* STATE OF MARYLAND

[No. 116, September Term, 1976.]

*Decided May 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

We granted certiorari in this case after the Court of Special Appeals, in an unreported opinion, *Byron (NMN) Jones v. State of Maryland,* [No. 1222, September Term, 1975, filed August 17, 1976], affirmed appellant's conviction in the Circuit Court for Prince George's County on charges of attempted robbery with a deadly weapon and use of a handgun in committing a crime of violence.

The primary issue raised on appeal to the Court of Special Appeals was whether the trial court erred "in refusing defense counsel an opportunity to obtain a psychiatric evaluation of Appellant's competency to stand trial, and in determining the issue instead on the basis of 'psychological reports' which were not made part of the record." The Court of Special Appeals, however, declined to review that question because appellant had not included the psychological reports in the record on appeal. The question subsequently framed by the petition for certiorari was whether the Court of Special Appeals erred in holding that appellant was himself under an obligation to supplement the record. We reverse.

Appellant was indicted on various charges growing out of

the attempted armed robbery and wounding of a cafeteria manager at Potomac High School in Oxon Hill. Because he was a juvenile when the crimes were committed, it first had been necessary for the juvenile court to waive exclusive jurisdiction over appellant, thus permitting him to be tried in the Circuit Court for Prince George's County as an adult. Shortly after being indicted, he filed written pleas of not guilty and of insanity "at the time of the commission of the alleged crimes." In consequence of appellant's insanity plea, the circuit court issued an order temporarily transferring him to the Clifton T. Perkins Hospital Center where he was to be examined by the Department of Mental Hygiene "to determine whether he was insane at the time of the commission of the alleged crime and [was] competent to stand trial." On appellant's withdrawal of the insanity plea several days later, however, the court rescinded its order providing for the examination at Perkins.

Some three months later, appellant appeared for trial. His attorney then moved the court (Taylor, J.) for a continuance "to file certain pleadings and specifically to file a plea of insanity." Counsel briefly related to the court the developments which had occurred before another judge earlier that morning. Appellant had apparently offered a plea of guilty to the first judge (Meloy, J.), but while appellant was offering his guilty plea, according to counsel's account of those proceedings, "things went haywire." As counsel explained to Judge Taylor, "in my talking with him I have had great difficulty many times in communicating with [him]." Further, "[appellant] indicated [to Judge Meloy] he did not know what a jury trial was." Counsel then stated:

"... I am in a perplexing situation because I feel after what went on in the other courtroom today that he may not understand what is going on. Because the plea was taken up to the point where Judge Meloy mentioned that he was waiving his right to a trial. And I don't think he understood what was going on. And he would say no. And then

the Judge asked him if he wanted to plead guilty and he said yes. And he asked him if he wanted to waive his right to trial and he would say no. So I don't know. And I don't feel that he is intelligent enough to understand the proceedings. That is my problem.

". . . I would ask the Court *if the Court would grant us the continuance,* give me a chance to file the insanity plea and *he would be evaluated* by the people at Perkins, then we would know where we stand. Because *he has not been evaluated in that respect. . . .*" (Emphasis added).

The prosecuting attorney objected to any continuance and urged that appellant be tried by a jury on that very day.

The court was then informed that appellant had been the subject of a psychological evaluation some nine months before, while still under the jurisdiction of juvenile authorities, which, according to appellant's counsel, revealed that "his mental testing was below average performance, fourth grade level, and he was in the dull normal range of intelligence . . . ." After issuing a request for the psychological reports, the court stated:

". . . If the psychological reports would tend to indicate that he is not competent, so to speak, to understand the nature of his activity here then I would favorably consider their motion. If it is silent or if it leaves me not so convinced, then we are going to trial."

The court then recessed and, with counsel present, reviewed the psychological reports in camera. Although the record is something less than explicit, the following statement by counsel suggests that the court found appellant competent to stand trial:

"[Defense Counsel]: If it please the Court, I have told my client that you have reviewed the reports

and you feel there is no need for the continuance; that the continuance will be denied."

The case then proceeded to trial, at the conclusion of which a jury found appellant guilty of attempted robbery with a deadly weapon and the handgun violation. The psychological reports, on which the trial court rested its determination of competency, were never presented on the record.

Maryland Code (1957, 1972 Repl. Vol.) Art. 59, § 23, which is controlling, provides in relevant part:

> "Whenever prior to or during the trial, any person charged with the commission of any crime shall appear to the court, or be alleged to be incompetent to stand trial, by the defendant himself, the court *shall determine upon testimony and evidence presented on the record* whether such person is unable to understand the nature of the object of the proceeding against him or to assist in his defense. ... The court for *good cause* and after affording the defendant an opportunity to be heard on his own behalf or through counsel *may* pass an order requesting an examination of the defendant by the Department of Mental Hygiene. ... If the court *after receiving testimony and evidence* determines that the defendant is competent to stand trial within the meaning of this section, the trial shall commence as soon as practicable or, if already commenced, shall continue. The court may in its discretion at any time during the trial and until the verdict is rendered, reconsider the question of the competency of the defendant to stand trial as otherwise provided in this section." (Emphasis added).

We need not decide here whether the statements of defense counsel were sufficient allegations of incompetency, within the contemplation of the statute, to cast upon the court the duty to determine whether appellant was competent to stand trial. The trial judge himself regarded the statements

as adequate for that purpose, and proceeded to make a determination of competency.

As we have indicated, appellant advanced in the Court of Special Appeals the twofold contention that the trial court erred in denying him an opportunity to obtain a psychiatric examination and by departing from the record in determining appellant's competency to stand trial on the basis of the psychological reports. For reasons that follow, we think the trial court erred in resting its determination of competency on matters outside the record in contravention of the statute, and shall reverse on that ground. But whether the court, in denying appellant's request for the psychiatric examination, abused the discretion conferred by Art. 59, § 23 is a question that we cannot reach, since it turns in large measure on the contents of the psychological report examined in camera and not "presented on the record." Art. 59, § 23.

Although the statute does not provide that a special or formal hearing be held to determine the competency of the accused to stand trial, it is unmistakably clear in its command that the determination be made upon testimony and evidence presented on the record. *Hill v. State*, 35 Md. App. 98, 369 A. 2d 98, 102 (1977); *Colbert v. State*, 18 Md. App. 632, 640-41, 308 A. 2d 726, *cert. denied*, 269 Md. 756 (1973). The statute employs the word "shall" in regard to this requirement, and there is nothing in the context in which it is used to negate the mandatory intent which the word "shall" ordinarily imports. *See Blumenthal v. Clerk of Cir. Ct.*, 278 Md. 398, 408-409, 365 A. 2d 279 (1976); *Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 169-70, 338 A. 2d 248 (1975); *Maryland St. Bar Ass'n v. Frank*, 272 Md. 528, 533, 325 A. 2d 718 (1974). Clearly, the psychological reports on which the trial court apparently relied for its ruling that appellant was competent to stand trial were never "presented on the record" as required by the statute. This defect in the proceedings, as we shall emphasize later, had consequences beyond merely precluding appellant from challenging on appeal the sufficiency of the evidence to support the trial judge's determination of competency.

The refusal of the Court of Special Appeals to reach the question presented by appellant on the ground that the reports were omitted from the record on appeal misses the point. This was not an attempt, as the Court of Special Appeals treated it, to raise substantive error without including the evidence on which the allegation was based. Here it was the very failure of the trial judge to rely on record evidence, as mandated by the statute, that was the basis for the appeal. To that extent, as we have demonstrated, the psychological reports themselves were not required on appellate review. Under the circumstances, responsibility for the omission of that evidence from the record cannot be shifted to appellant. Consequently, not only did the trial court err in departing from the record for its determination of competency, but also the Court of Special Appeals erred in refusing to decide that issue.

As an alternative ground for reversal, appellant also contends that the trial court misallocated the applicable burden of proof in deciding the competency issue because it did not find appellant competent beyond a reasonable doubt. *See Hill v. State,* 35 Md. App. at 107; *Colbert v. State,* 18 Md. App. at 641. Appellant rests this contention on the trial judge's suggestion that he would grant the motion for a psychiatric examination if the psychological evaluation "would tend to indicate that [appellant] is not competent," but that he would deny the motion if the psychological evaluation did not persuade him of appellant's incompetency. In light of our decision that there must be a new trial, we need not decide whether the court applied the correct burden of proof on finding appellant competent, or whether, given the allegation of incompetency, the court was merely exercising its discretion under the statute in regard to a possible "order requesting an examination of [appellant] by the Department of Mental Hygiene." Art. 59, § 23.

In light of our holding, then, that the trial court erred in not deciding appellant's competency upon "evidence presented on the record" and that the Court of Special Appeals erred in refusing to pass on that issue, we turn to the proper disposition to be made in this case. Appellant

urges that he be granted a new trial at which he may again raise the issue of competency, while the State argues that we should remand the case without affirmance or reversal, pursuant to Maryland Rule 871 a, to permit the reports relied upon by the trial court to be included in the record. Implicit in the State's contention is the suggestion that we would then simply review the reports to determine whether there was sufficient evidence to support the trial court's determination of competency. We think the State's position fails to take proper account of the consequences that flow from the procedure erroneously followed by the trial court.

Failure to determine competency "upon testimony and evidence presented on the record," as required by the statute, nullifies not only the determination itself, but also the trial and resulting conviction. One of "the primary purposes of the insanity laws [is] to prevent an insane person from being tried for an alleged criminal offense until he has recovered his reason . . . ." *Rowe v. State*, 234 Md. 295, 306, 199 A. 2d 785, *cert. denied*, 379 U. S. 924 (1964). Once the defendant is "alleged to be incompetent to stand trial," an allegation which the trial court found to have been made here, the court may commence or continue the trial, as the case may be, only if, "after receiving testimony and evidence [it] determines that the defendant is competent to stand trial within the meaning of [Art. 59, § 23.]" A determination of competency, as we have seen, means one made upon "testimony and evidence presented on the record." In sum, before the trial may properly commence or continue, given a sufficient allegation of incompetency within the contemplation of Art. 59, § 23, the trial court is first required to make a determination of the defendant's competency upon "testimony and evidence presented on the record." Absent such a determination, no resulting conviction can stand. *Cf. Gill v. State*, 265 Md. 350, 357-60, 289 A. 2d 575 (1972) (remand without affirmance or reversal held improper, new trial being necessary where redetermination that confession was voluntary is required).

There is, then, more at stake here than a mere determination of whether the psychological reports were

sufficient to support the trial judge's determination of competency, or even whether the trial court acted in compliance with the requirements set forth in Art. 59, § 23. Failure to invoke proper statutory procedures designed to ensure that the defendant not be tried if incompetent, in this instance by not making the determination on evidence of record, may result in the denial of a fair trial in violation of the defendant's constitutional rights. *See Drope v. Missouri,* 420 U. S. 162, 172, 95 S. Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U. S. 375, 385, 86 S. Ct. 836, 15 L.Ed.2d 815 (1966); *Sullivan v. United States,* 205 F. Supp. 545, 550 (S.D.N.Y. 1962). *But cf. United States v. Makris,* 535 F. 2d 899, 904 (5th Cir. 1976), *cert. denied,* 45 U.S.L.W. 3666 (April 5, 1977) (federal court sanctioned *nunc pro tunc* competency hearing where sufficient data was available to guarantee reliability).

We hold, accordingly, that appellant is entitled to a new trial, at which, if he makes a sufficient allegation of incompetency to stand trial, a new determination of that issue shall be made in compliance with Art. 59, § 23.[1]

> *Judgment of the Court of Special Appeals reversed; remanded to that court with instructions to reverse the judgment below and to remand to the circuit court for a new trial; costs to be paid by Prince George's County, Maryland.*

---

1. We noted earlier that the trial court made its determination of appellant's competency to stand trial on the strength of psychological reports allegedly prepared some nine months earlier. We can express no view on whether this was proper, since we have not seen the reports. Wholly apart from the question whether a determination resting upon reports made nine months prior to the hearing was proper, is the question which may possibly arise on remand: whether now, some 18 months after the first trial, the same reports can be the basis for a determination of competency at this time. *See* Drope v. Missouri, 420 U. S. 162, 183, 95 S. Ct. 896, 43 L.Ed.2d 103 (1975).

Moreover, the psychological evaluation furnished the juvenile authorities may be of questionable value, under any circumstances, in ascertaining whether appellant is competent to stand trial, since he was not at that time being evaluated with that issue in mind, but merely for the purpose of determining whether the juvenile court should waive jurisdiction.