541 A.2d 637

**Sigismund Nathaniel SANGSTER**

v.

**STATE of Maryland.**

**No. 70, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 27, 1988.

Cole, J., filed a dissenting opinion in which Adkins, J., joined.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

This case involves the procedure by which a trial court determines the competency of an accused to stand trial. The issue is whether a trial judge may, over objection by the accused, consider in written report form the opinions as to the accused's competency expressed by psychiatrists who examined the accused pursuant to Md.Code (1982, 1987 Cum.Supp.), § 12–104 of the Health–General Article (H–G). At the pretrial competency hearing in the instant matter the petitioner presented expert testimony that he was not competent to be tried. Under these circumstances the petitioner contends that H–G § 12–103(a) and constitutional procedural due process each bar trial court consideration of the written reports unless the State also produces the opining physicians in person as witnesses subject to cross-examination.

In May of 1985 a team of Prince George's County police officers executed a search warrant for marijuana at an apartment occupied by the petitioner, Sigismund Nathaniel Sangster (Sangster), who barricaded himself in the apartment's rear bedroom. Through the closed bedroom door Sangster fired shots which wounded two of the officers. The police responded by shooting through the door, thereby wounding Sangster. After approximately five hours Sangster emerged from the bedroom, was disarmed and taken into custody.

He was indicted on twenty-one counts, including four counts of assault with intent to murder. Defense counsel moved for a determination of whether Sangster was incompetent to stand trial.[1] Sangster also, through counsel,

---

1. H–G § 12–101(d) provides:
   "Incompetent to stand trial" means not able:
   (1) To understand the nature or object of the proceeding; or

pleaded that when the alleged crimes were committed he was not criminally responsible by reason of insanity.[2] The circuit court ordered that Sangster be sent to Clifton T. Perkins Hospital Center (Perkins) for competency and responsibility determinations. Sangster was admitted to Perkins on January 23, 1986. According to a forensic conference note dictated February 3, 1986, each of four psychiatrists concluded that Sangster was competent and responsible. That forensic conference note, signed by one of the participating staff psychiatrists, was sent under cover of a letter dated February 4, 1986, signed by the Superintendent of Perkins and by that same staff psychiatrist, to the circuit judge who had ordered the examination. The letter and conference note were filed on February 19, 1986, in the court clerk's file of original papers in this case.[3]

The trial on the merits of this case was set for February 24, 1986. Prior to that morning's proceedings on the record defense counsel had advised the court that he intended to produce expert testimony as to Sangster's incompetency. On the morning of trial a competency hearing was held at which a psychiatrist called by Sangster testified that the accused was incompetent. Sangster then took the stand and testified on direct and cross-examination.

---

(2) To assist in one's defense.
In this opinion we shall use "incompetent" and "incompetency" to describe an accused and the state of being of an accused who conforms with the foregoing test.

2. H–G § 12–108(a) provides the following test for criminal responsibility for criminal conduct:
A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity:
    (1) To appreciate the criminality of that conduct; or
    (2) To conform that conduct to the requirements of law.
In this opinion "responsible" and "responsibility" will be used to describe an accused and the state of being of an accused who conforms with the foregoing test.

3. No issue is presented here as to whether the letter and conference note constituted a "complete report of ... findings" within the meaning of H–G § 12–104(d)(1)(ii).

After the defense indicated that it had no further witnesses, the court asked the State if it had any witnesses. Thereupon the following exchange occurred which comprises the ruling under review in this appeal:

[STATE'S ATTORNEY]: No, Your Honor, I don't have.

If you have a copy of the report from Clifton T. Perkins—

THE COURT: I have it. It says that they are unanimously convinced that he understands the nature and the object of these proceedings, and he's able to assist in his own defense.

MR. SLATKIN: Your Honor, I'm going to object to the Court's notice and reading of their evaluation. All we have is a one or two page conclusionary statement made by the doctors with no basis in facts. I certainly believe that an opportunity to cross-examine their conclusions is more than warranted in this case.

THE COURT: All right. Anything else?

MR. SLATKIN: No, sir.

THE COURT: I'm convinced beyond a reasonable doubt that he does understand the nature and the object of these proceedings. And I—and he's able to assist in his own defense.

In a jury trial Sangster was found guilty on a number of the charges against him and was also found to be responsible. The various consecutive sentences imposed on Sangster total 111 years.

The Court of Special Appeals affirmed. *Sangster v. State,* 70 Md.App. 456, 521 A.2d 811 (1987). On that appeal Sangster contended that the trial court had violated the mandate of H–G § 12–103(a) which provides:

(a) *Hearing.*—If, before or during a trial, the defendant in a criminal case appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence

presented on the record, whether the defendant is incompetent to stand trial.[4]

Sangster's point was that the report was not "evidence presented on the record." Sangster further argued that, under *Jones v. State*, 280 Md. 282, 372 A.2d 1064 (1977), the report from Perkins could not be considered by the trial judge in making his determination.[5] Absent that foundation, he contended, the finding of competency was not supported by sufficient evidence.[6]

The Court of Special Appeals viewed Sangster's argument as claiming a denial of the right of confrontation and held that that right did not attach because a competency hearing "is not a prosecutorial proceeding as contemplated by the State and Federal constitutions." 70 Md.App. at 469, 521 A.2d at 817. That court further held that, even if the right to confrontation had attached

appellant did not act to preserve those rights. If appellant wanted to cross-examine the physicians concerning the opinions they expressed in the hospital report, he

---

**4.** The balance of H–G § 12–103 reads:

(b) *Court action if defendant competent.*—If, after receiving evidence, the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue.

(c) *Reconsideration of competency.*—At any time during the trial and before verdict, the court may reconsider the question of whether the defendant is incompetent to stand trial.

**5.** The problem presented in *Jones v. State* is not presented here. In *Jones* the trial court had considered certain psychological evaluations of the accused which were made while the accused was under the jurisdiction of juvenile authorities, some nine months prior to the competency determination. The trial court in *Jones* considered those reports in camera. They were never introduced into evidence nor were they filed in the court clerk's file of original papers. The evaluations in *Jones* were not presented to the court through the procedure specified in H–G Title 12 concerning a referral by the court of an accused for a competency evaluation and report back to the court.

**6.** Because we shall hold, *infra,* that the report was "evidence presented on the record" we have no occasion to consider the sufficiency of the evidence of competency without the report.

should have called them as witnesses. Having failed to do so, he waived his right to cross-examine them at the competency hearing. [*Id.* at 470, 521 A.2d at 817–18.]

Sangster petitioned for certiorari which we issued. The petition presents the single question: "Did the trial judge fail to determine competency upon evidence presented on the record?" In his petition, in his brief and at oral argument Sangster eschews relying on a constitutional right of confrontation but he does submit that due process gave him a right to confront and cross-examine the physicians from Perkins.

In light of the way in which the objection arose at the competency hearing, the issue before us is a narrow one. Sangster objected to consideration of the content of the report from Perkins without an opportunity for the accused to cross-examine the opining experts. Consequently, the issue is whether the State is obliged to have the examining physicians available at a competency hearing in order to satisfy either a statutory or constitutional predicate for the court's use of the report in evaluating and ruling on competency. We shall consider the nonconstitutional issue first.

# I

■ Determining the meaning of "evidence presented on the record" in H–G § 12–103(a) requires consideration, in addition, of H–G § 12–104 which deals with the examination as to competence. The latter section, in relevant part, provides:

(a) *Examination authorized.*—(1) For good cause and after giving the defendant an opportunity to be heard, the court may order the Department [of Health and Mental Hygiene] to examine the defendant to determine whether the defendant is incompetent to stand trial.

(2) The court shall set and may change the conditions under which the examination is to be made.

. . . .

(d) *Report on examination.*—(1) If a court orders an examination under this section, the Department shall:

    (i) Examine the defendant; and

    (ii) Send a complete report of its findings:

    1. To the court;

    2. To the State's Attorney;

and

    3. To the defense counsel.

(2) Unless there is a plea that the defendant was not criminally responsible under § 12–108 of this title, the defendant is entitled to have the report within 7 days after the court orders the examination. However, failure of the Department to send the complete report within that time is not, of itself, grounds for dismissal of the charges. On good cause shown, the court may extend the time for examination.

(3) If the Department reports that, in its opinion, the defendant is incompetent to stand trial, the report shall state, in a complete supplementary opinion, whether, because of mental retardation or mental disorder, the defendant would be a danger to self or the person or property of another, if released.

The General Assembly by statute can modify the common law hearsay rule and permit the introduction at competency proceedings of reports from the Department without requiring a testimonial foundation similar to that required for business records. If the court orders an examination by the Department, the Department sends the report directly to the court which ordered the examination. Thus, authenticity and reliability are as well ensured as in the admissibility of business records. *Cf.* Md.Code (1974, 1984 Repl.Vol.), § 10–101 of the Courts and Judicial Proceedings Article.

The obvious purpose of the statutory scheme is to make available to a requesting court the expertise of the Department. The statute directs that the findings resulting from the application of that expertise are to be embodied in a

report. To achieve the legislative purpose the court must read the report.

Further, H–G § 12–104(d) requires that the Department submit the report concerning competency to (1) the court, (2) the State's Attorney and (3) the defense counsel. That was done in this case. Thus the statute itself ensures that the arbiter and the adversaries are equally informed of the report's content. In this way the statute makes the report "evidence on the record" for consideration at the competency hearing to the same extent as if the report were formally offered and marked as an exhibit at the hearing.[7]

That the report, as a report, is "evidence on the record" is supported by decisions of the Court of Special Appeals under predecessor statutes. To demonstrate the pertinency of those decisions requires that we trace the history of the current statutory provision.

Present H–G § 12–103 is part of a revision of Title 12 of the Health–General Article resulting from the work of The Governor's Task Force to Review the Defense of Insanity. That revision was enacted by Ch. 501 of the Acts of 1984. The task force comment to § 12–103 reflects that it replaces Md.Code (1982), H–G § 12–102 without substantive change.

Code (1982), H–G § 12–102(a), which likewise spoke of "evidence presented on the record," was part of the new Health–General Article enacted by Ch. 21 of the Acts of 1982. The Revisor's Note to Code (1982), H–G § 12–102 states that "[t]his section is new language derived without substantive change from the first, eighth, and ninth sentences of former Article 59, § 23." That note also advises that "[i]n subsections (a) and (b) of this section, the former references to 'testimony' are deleted as unnecessary in light of the broad references to 'evidence'."

Former Art. 59, § 23 in relevant part provided:

Whenever prior to or during the trial, any person charged with the commission of any crime shall appear to

---

7. The better practice is to mark the report as an exhibit at the hearing.

the court, or be alleged to be incompetent to stand trial, by the defendant himself, the court shall determine upon testimony and evidence presented on the record whether such person is [incompetent].... Whenever any defendant shall be referred to the Department of Mental Hygiene for an examination of his competency to stand trial under this section, he shall be examined and a full and complete report of findings shall be forwarded to the court having jurisdiction over the defendant, to the State's attorney and to counsel for the defendant within the time specified ... below. If the court after receiving testimony and evidence determines that the defendant is competent ... the trial shall commence as soon as practicable or, if already commenced, shall continue. [Md.Code (1957, 1979 Repl.Vol.), Art. 59, § 23.]

The above-quoted language was enacted by Ch. 709 of the Acts of 1967 which substantially revised provisions of Art. 59 when it was entitled "Lunatics and Insane."

*Colbert v. State,* 18 Md.App. 632, 308 A.2d 726, *cert. denied,* 269 Md. 756 (1973) involved a competency issue which arose under the procedure enacted in 1967. Psychiatrists at Perkins had reported the accused to be competent. Before trial began defense counsel filed two motions, one asking for an "independent" psychiatric examination and the other asking the court to conduct a hearing to ascertain competency. 18 Md.App. at 636–37, 308 A.2d at 729. These motions were supported by the report of an evaluation of the accused done by two Ph.D. psychologists. The trial court considered the written reports from Perkins and from the defense psychologists and denied both motions. The Court of Special Appeals affirmed. In answer to a contention that there had been no "hearing" on competency, that court said:

The statute requires that the determination be made "upon testimony and evidence presented on the record", but it does not require that such testimony and evidence be presented in a separate hearing, as appellant contends. We said in *Strawderman* [*v. State,* 4 Md.App. 689, 695,

244 A.2d 888, 891 (1968), *cert. denied,* 252 Md. 733
(1969)], "Of course, in a jury trial, evidence with regard
to it should be received out of the presence of the jury",
but we did not say, nor do we now say, that a judge with
no jury present is required to use any magic words to
designate as a separate hearing the presentation to him
of testimony and evidence for his determination of the
competency of the accused to stand trial. It is sufficient
if the testimony and evidence are on the record. [*Id.* at
640–41, 308 A.2d at 731.]

In *Rozzell v. State,* 5 Md.App. 167, 174, 245 A.2d 917,
920–21 (1968), *cert. denied,* 252 Md. 732 (1969), the Court of
Special Appeals, after stating that the trial court had fol-
lowed the statutory procedure, reviewed in detail the proce-
dure utilized in that case. It included consideration of the
report, as such, of the chief clinical psychologist at Perkins
who had examined the accused. In *Rozzell,* however, the
Perkins psychiatrist who had examined the defendant was
produced by the State and testified about competency. 5
Md.App. at 174–75, 295 A.2d at 921.

Inasmuch as the *procedure* for determining competency
has remained essentially unchanged since 1967, the legisla-
tive history of the 1967 enactment is also material to
interpreting "evidence on the record" in present H–G
§ 12–103. Chapter 709 of the Acts of 1967 placed the
provisions relevant here in former Art. 59, § 7. After
providing for copies of the report to be forwarded to the
court, to the prosecutor and to defense counsel, Ch. 709 in
introductory bill form read in part:

> If the court after receiving any other testimony and
> evidence determines that the defendant is competent to
> stand trial ... the trial shall commence....

In the course of passage the words "any other" were
stricken. In its introductory form the bill would clearly
have been read to mean that the report constituted testimo-
ny and evidence and that the court could receive any other
testimony and evidence. The striking of "any other" does
not alter this meaning. After providing by statute for a

court ordered examination, a full and complete report of that examination and copies of the report to be furnished to the court and the parties, it is redundant to refer back to the report as evidence to be considered at a competency hearing.

The proposed revisions which resulted in Ch. 709 of the Acts of 1967 had been submitted to the Legislative Council by the then Commission on Criminal Law. *See* Legislative Council of Maryland, *Report to the General Assembly of 1967*, 135–39; State of Maryland Commission on Criminal Law, *Report and Part I of Proposed Criminal Code*, vi–vii (1972). Files of the reporter to the Criminal Law Commission indicate that the deletion of "any other" was intended to eliminate any implication that the receipt of a report from the Department was a condition precedent or jurisdictional prerequisite for the circuit court to proceed to trial on the merits. That implication was contrary to *Hazel v. State*, 226 Md. 254, 263, 173 A.2d 187, 191 (1961), *cert. denied*, 368 U.S. 1004, 82 S.Ct. 638, 7 L.Ed.2d 542 (1962). Thus today, under H–G § 12–103(a), if the defendant alleges incompetency, the court "shall" determine the issue, but under H–G § 12–104 the court "may" order an examination and report.

Viewed solely from the textual standpoint, another possible interpretation of the striking of "any other" is that the deletion was intended to prevent considering the report at the hearing, absent compliance with the strict rules of evidence. This position is the precise one advocated by Sangster in the instant matter. The legislative history, however, clearly demonstrates that that position could have been adopted by the General Assembly in 1967, but was not.

The 1967 revisions to former Art. 59 were intended to eliminate the confusion in earlier statutes which had been revealed in *Rowe v. State*, 234 Md. 295, 199 A.2d 785, *cert. denied*, 379 U.S. 924, 85 S.Ct. 281, 13 L.Ed.2d 336 (1964). In a dissent by Judge Henderson, joined by Chief Judge Brune and Judge Hammond, the General Assembly was

urged to take corrective action. 234 Md. at 322–23, 199 A.2d at 801.

Responding to that request the Commission on Criminal Law and the Legislative Council considered the Model Penal Code, the Official Draft of which had been adopted by the American Law Institute on May 24, 1962. The bill proposed by the Legislative Council used the Model Penal Code tests for responsibility and competency.[8]

The standard for competency proposed in Model Penal Code § 4.04 is the standard now found in H–G § 12–101(d).[9] In § 4.05 the Model Penal Code provides for a psychiatric examination and report to the court and to counsel for the parties.

Section 4.06 of the Model Penal Code deals with the competency hearing. In relevant part it provides:

> (1) When the defendant's fitness to proceed is drawn in question, the issue shall be determined by the Court. If neither the prosecuting attorney nor counsel for the defendant contests the finding of the report filed pursuant to Section 4.05, the Court may make the determination on the basis of such report. If the finding is contested, the Court shall hold a hearing on the issue. *If the report is received in evidence upon such hearing, the party who contests the finding thereof shall have the right to*

---

8. The explanation by the Legislative Council accompanying the bill in relevant part reads as follows:

   This bill recommended by the Legislative Council is a result of the joint work of the Crimes Subcommittee of the Council and a Subcommittee of the Governor's Study Commission on Criminal Laws. The bill defines the tests for the criminal defenses of both insanity at the time of the commission of an offense and insanity at the time of trial. It also specifies certain procedures in connection with the defenses.... The test prepared by the bill is similar to the Model Penal Code Test as prepared by the American Law Institute. [*Report to the General Assembly of 1967*, at 135 (italics omitted).]

9. Section 4.04 of the Model Penal Code reads:

   No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures.

*summon and to cross-examine the psychiarists who joined in the report and to offer evidence upon the issue.* [Emphasis added.]

The General Assembly chose not to adopt the procedure so clearly spelled out in the Model Penal Code. The result is that, if the court orders a report, that report, as a report, may be considered at the competency hearing as "evidence on the record" within the meaning of H–G § 12–103(a) without the person reporting being present.

## II

■ Sangster also contends that due process guarantees him the right to exclude the Perkins report unless one, or perhaps all four, of that institution's examining physicians are made available by the State for cross-examination. The aspect of due process invoked here is the right to a fair trial. The failure of a state to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives a defendant of due process. *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

■ That the procedure employed here was adequate to protect Sangster's right not to be tried while incompetent may be demonstrated by comparison to the procedure employed in federal courts to deal with the competency issue.

By the Act of September 7, 1949, ch. 535, § 1, 63 Stat. 686 Congress enacted, *inter alia,* former Title 18 U.S.C. § 4244. "[T]he bill was proposed by the Judicial Conference of the United States after long study by a conspicuously able committee, followed by consultation with federal district and circuit judges." *Greenwood v. United States,* 350 U.S. 366, 373, 76 S.Ct. 410, 414, 100 L.Ed. 412, 418 (1956). That section in part provided that, upon a motion by the United States Attorney for a judicial determination of competency to stand trial

> or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused ... to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court.... If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto.

The statute did not specify the procedure to be followed when the psychiatrist reported to the court that the accused was competent.

Federal courts generally held that no hearing at all was required by 18 U.S.C. § 4244 if the accused were reported to be competent. *See, e.g., United States v. Williams,* 819 F.2d 605 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988); *United States v. Percy,* 765 F.2d 1199 (4th Cir.1985); *United States v. Veatch,* 674 F.2d 1217 (9th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *United States v. Dunn,* 594 F.2d 1367 (10th Cir.), *cert. denied,* 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979); *United States v. Winn,* 577 F.2d 86 (9th Cir.1978); *United States v. Shepard,* 538 F.2d 107 (6th Cir.1976) (as to the scope of the "qualified psychiatrist" requirement); *United States v. Stern,* 519 F.2d 521 (9th Cir.), *cert. denied,* 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975); *Cheely v. United States,* 367 F.2d 547 (5th Cir.1966), *cert. denied,* 387 U.S. 923, 87 S.Ct. 2039, 18 L.Ed.2d 978 (1967); *United States v. Bell,* 57 F.R.D. 31 (E.D.Tenn.1972); *United States v. Everett,* 146 F.Supp. 54 (D.Kan.1956). And *see* 1 C. Wright, *Federal Practice and Procedure* § 196, at 727 (1982) ("If the psychiatrist reports that the defendant is mentally competent to stand trial, no hearing is required...." (footnote omitted)). In the *Veatch, Dunn,* and *Stern* cases, *supra,* there were other psychiatric opinions before the court indicating that the accused was not competent to stand trial.

The federal statutes, including former § 4244, were amended by the Act of October 12, 1984, 98 Stat. 2057 *et seq.* Present Title 18, § 4241(a) provides that the court shall grant a motion for a hearing to determine competency "if there is reasonable cause to believe that the defendant may presently be ... incompetent[.]" The court may order a prehearing psychiatric examination. § 4241(b). The report of the examination is filed with the court and copies are provided to counsel for the person examined and to the attorney for the Government. § 4247(c). Subsection (d) of § 4247 addresses the hearing and in part provides that the person whose mental condition is the subject of the hearing "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses *who appear at the hearing.*" [Emphasis added.]

The procedure under the 1984 federal statute was involved in *United States v. Williams, supra,* where the defendant's pretrial competency proceeding was governed by the old statute but a post-sentencing competency determination was governed by the new statute. At resentencing the defendant asked for a competency hearing but was denied his request. The defendant then submitted records and reports from a federal psychiatric facility to which he had been committed for evaluation to support his request for a competency hearing. The trial court read those records to reflect that the defendant either previously or presently had "mental problems" but concluded that there was no showing of reasonable cause to believe that the defendant did not understand the proceedings or was unable to assist counsel. The Fifth Circuit rejected the prisoner's post-conviction relief contention that the refusal to hold a hearing had violated procedural due process where the district court's factual finding based on the reports was not clearly erroneous.

The United States Supreme Court has also recognized, in effect, that an evidentiary hearing is not a *per se* due process requirement for a finding of competency. In *Mag-*

*gio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983), a Louisiana prisoner contended in a federal habeas corpus proceeding that he had been denied rights recognized in *Pate v. Robinson, supra,* when the trial court refused to order a state financed competency inquiry despite the opinion of incompetency expressed by a psychiatrist who had interviewed the defendant for one hour on the day before the trial date. The trial court had based its conclusion of competency on its own observations of the accused, on its rejection of the principal factual predicate for the defense psychiatrist's opinion and on its belief that the request for a competency hearing was a subterfuge to obtain a last-minute postponement. The Supreme Court held, *per curiam,* that the conclusions of the Louisiana trial judge were fairly supported by the record and reversed the Fifth Circuit's holding that it could not "with the certitude befitting a federal court, affirm that Fulford possessed the mental competency to participate meaningfully in his trial." *Fulford v. Maggio,* 692 F.2d 354, 361 (5th Cir.1982) (footnote omitted).

In the case *sub judice* the trial court heard the testimony of Sangster's psychiatrist. The court was able to evaluate his opinion not only in the light of Sangster's testimony and observed conduct, but also in light of the opinions expressed by the examining physicians at Perkins in their report. Sangster's counsel had been furnished a copy of the report. The defense could have subpoenaed one or more of the reporting physicians and cross-examined them concerning their conclusion that Sangster was competent. As the federal cases make plain, the fact that the trial court considered the opinions of the Perkins staff in report form does not, of itself, render the procedure inadequate to protect Sangster's right not to be tried while incompetent.

Minimum due process guarantees are "largely a function of the circumstances and the interests at stake." *Ford v. Wainwright,* 477 U.S. 399, 411, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335, 347 (1986) (opinion announcing judgment). Sangster's interest in not standing trial while incompetent

affects only the timing of Sangster's trial, not the question of guilt or innocence. Even if a trial judge errs in a pretrial finding of competency, the error is not beyond correction. Under H–G § 12–103(c) a court may reconsider the issue of incompetency "[a]t any time during the trial and before verdict. . . ."

The State is interested, both as a matter of justice and of economy, in not conducting criminal trials of incompetent persons. The State also has an interest in competency determinations not being wasteful to the taxpayers. Under Sangster's contention consideration by a court of written psychiatric reports requires, as a condition precedent, that the State have the reporting experts personally present in court in all cases in which there is no prior waiver of the claimed due process right. Nothing in the present Maryland statutes prevents one in Sangster's position from subpoenaing and cross-examining the reporting experts. Constitutional due process does not require more.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY THE PETITIONER.

COLE, Judge, dissenting.

The real issue in this case is whether in a competency hearing a court may base its ultimate ruling on evidence which does not comply with the statute.

The majority opinion holds that a cursory, one page "conference note" prepared by a team of doctors from the Clifton T. Perkins Hospital Center constituted sufficient evidence on the record, in and of itself, to find the defendant competent to stand trial. Because I believe that the Perkins "report" did not meet the minimum evidentiary requirements set by statute, I dissent.

The inadequacy of this report and its failure to comply with the statute were the basis of Sangster's objection. At the hearing, his counsel stated:

**578**

Your Honor, I'm going to object to the Court's notice and reading of their evaluation. All we have is a one or two page conclusionary [sic] statement made by the doctors with no basis in facts. I certainly believe that an opportunity to cross-examine their conclusions is more than warranted in this case.

The majority is wrong in summarily dismissing the issue of whether Sangster's competency should have been determined on the basis of this particular report. The Court brushes aside this issue and focuses on whether the defense should have been allowed to cross-examine the Perkins doctors.

As I see it, the majority misses Sangster's point that the trial judge failed to determine competency upon "evidence presented on the record," as required by Md.Code (1982, 1987 Cum.Supp.) Health–General Article § 12–104.[1] Unfortunately, the Court fails to grasp the import of that section, which requires filing of a complete report following the competency examination. This was not done and, consequently, Sangster's competency determination was not based upon "evidence presented on the record."

The majority relies heavily upon cases applying former Title 18 U.S.C. § 4244 to "demonstrate[ ] by comparison" that Sangster's right not to be tried while incompetent was adequately protected. However, unlike Health–General § 12–104, which calls for the court to be provided a *complete* competency examination report, § 4244 included no such specific mandate. The majority fails to discern this crucial distinction.

---

**1.** Section 12–104 provides in pertinent part:
    (d) **Report on examination.—**(1) If a court orders an examination under this section, the Department shall:
      (i) Examine the defendant; and
      (ii) Send a complete report of its findings:
      1. To the court;
      2. To the State's Attorney; and
      3. To the defense counsel.

Apparently desiring to avoid any substantive discussion of whether the statute has been complied with, the majority asserts in footnote three that no issue is presented as to whether the report constituted a "complete report" within the meaning of § 12–104(d). The majority's rationale suffers from internal inconsistency. On the one hand, it recognizes the importance of compliance with § 12–104 in determining what qualifies as "evidence presented on the record." On the other hand, it contends that whether the Perkins report was "complete" within the meaning of § 12–104(d) is a non-issue. I believe that such an issue is presented and that its proper resolution is central to this case.

After recognizing that compliance with § 12–104 is a prerequisite to qualifying a proffered exhibit as "evidence presented on the record," the majority contends that § 12–104(d) was complied with because the so-called report was forwarded to the trial court, the State's Attorney, and the defense counsel. The majority disregards § 12–104(d)'s requirement that the report be "complete." In my view, the Perkins report was far from a "complete report" and, consequently, § 12–104(d) was *not* complied with. The word "complete" is not merely adjectival but is a statutory requirement. In fact, as the legislative history makes clear, the General Assembly's intent was to require a *"full* and complete report."[2]

We discussed the rationale behind such a requirement in *Raithel v. State,* 280 Md. 291, 372 A.2d 1069 (1977). There

---

**2.** The Task Force Comment to § 12–104 indicates that it replaced Md.Code (1982) H–G § 12–103 without pertinent substantive change. The Revisor's Note to former § 12–103 states that "[t]his section is new language derived without substantive change from the third through the seventh sentences of former Article 59, § 23...."

Md.Code (1957, 1979 Repl.Vol.) Article 59, § 23 in relevant part provided:

.... Whenever any defendant shall be referred to the Department of Mental Hygiene for an examination of his competency to stand trial under this section, he shall be examined and a *full and complete* report of findings shall be forwarded to the court.... (Emphasis supplied).

we criticized the practice, in determining a defendant's competency to stand trial, of placing

a premium on a conclusory [psychiatric] opinion, which contributes little to the resolution of the difficult task confronting the trial judge. 'To the extent that psychiatric testimony is utilized, ... it should be descriptive of the defendant's condition rather than conclusory.' (Citation omitted).

*Id.* at 303, 372 A.2d 1069.

The Perkins synopsis considered by the trial court at Sangster's competency hearing suffered from the same shortcoming that we disapproved in *Raithel.* Following a superficial description of the defendant, the report set forth as follows a series of purely conclusory "forensic opinions":

FORENSIC OPINIONS:

Dr. O'Brien: Passive–Dependent Personality Disorder. Cannabis Abuse, by history. Competent and responsible.

Dr. Mokhtari: Passive–Dependent Personality Disorder. Cannabis Abuse, by history. Competent and responsible.

Dr. Fitzpatrick: Passive–Dependent Personality Disorder. Cannabis Abuse, by history. Competent and responsible.

Dr. Rojas: Schizophrenic Disorder, Residual. Passive–Dependent Personality Disorder. Cannabis Abuse, by history. Competent and responsible.

FINAL OPINIONS: (1) Passive–Dependent Personality Disorder. (unanimous)

(2) Cannabis Abuse, by history. (unanimous)

(3) Schizophrenic Disorder, Residual. (minority)

The report concluded, without elaboration, that Sangster was able to understand the nature and object of the proceedings against him and to assist in his own defense. In the absence of any explanation or foundation for the above opinions, such as specific observations made and evaluative methods used, the report's bare-bones conclusions were of

dubious value in determining competency. Lacking such information, the report failed in its essential purpose as a fact-finding tool.

The Perkins report stood in stark contrast to the testimony offered by Sangster's expert witness, Dr. Richard Epstein. Dr. Epstein testified on direct and cross-examination as to his medical training and experience in the psychiatric field, and provided a detailed factual foundation for his conclusion that the defendant was incompetent to stand trial. On the other hand, the Perkins report offered no such foundation for its bald assertions; moreover, it failed to set forth any particular training or experience which qualified these doctors to render expert opinions. Nevertheless, the majority gives its nod of approval to the trial court's consideration of the report merely because the judge requested the report's preparation and because it was filed with the clerk.

In summary, the Perkins memorandum did not constitute a "complete report" as required by statute. To the contrary, they were statements before the court unsupported by any case history information, psychiatric examination results, or analysis of any kind giving rise to the conclusions offered. Consequently, it did not qualify as "evidence presented on the record" and should not have been regarded by the trial judge as sufficient to support a finding of competence. In addition, given the Court's view that a competency report may be considered as evidence on the record even though the examining doctors are not made available for cross-examination, strict compliance with the statutory requirement of a full and complete report as an evidentiary prerequisite becomes all the more imperative. I believe the majority makes a grievous error in placing its imprimatur on such a slipshod response to a statutory procedure.

ADKINS, J., has authorized me to say that he joins in this dissenting opinion.