18 A.3d 917

**Dwayne Antonio PEAKS**

v.

**STATE of Maryland.**

**No. 59, Sept. Term, 2010.**

Court of Appeals of Maryland.

April 26, 2011.

Juan P. Reyes, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, BARBARA, JJ.

GREENE, J.

Petitioner, Dwayne Antonio Peaks ("Peaks") was convicted of multiple offenses following a jury trial in the Circuit Court for Baltimore City. Peaks argues that the trial judge did not make an adequate determination of Peaks's competency to

stand trial under Md.Code (1974, 2008 Repl.Vol.), § 3–104 of the Criminal Procedure Article. Section § 3–104 states:

(a) In general.—If, before or during a trial, the defendant in a criminal case or a violation of probation proceeding appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial.

(b) *Court action if defendant found competent.*—If, after receiving evidence, the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue.

(c) *Reconsideration.*—At any time before final judgment, the court may reconsider the question of whether the defendant is incompetent to stand trial.

Specifically, the Petitioner presents one question for our review:

Where a defendant's competency is explicitly called into question and a competency evaluation is ordered, *sua sponte*, by a Circuit Court judge, does § 3–104 of the Criminal Procedure Article of Maryland's Annotated Code require the trial judge to make a proper competency determination prior to the commencement of trial and before a defendant can be permitted to discharge his counsel?

In the present case, the Circuit Court judge acted properly under § 3–104 in determining that the defendant, Peaks, was competent to stand trial. Defense counsel first raised the issue of Peaks's competency following his arraignment, and the court ordered a competency evaluation pursuant to Md. Code (1974, 2008 Repl.Vol.), § 3–105 of the Criminal Procedure Article, which authorizes a judge to "order the Health Department to examine the defendant to determine whether the defendant is incompetent to stand trial." [1] Based on the

---

1. Section 3–105 provides, in pertinent part:

(a) *In general.*—(1) For good cause and after giving the defendant an opportunity to be heard, the court may order the Health Department to

results of the evaluation of Peaks and the evidence on the record, when the case came before Judge Barry G. Williams for trial, he determined that Peaks was competent to stand trial. In a subsequent proceeding, however, Judge Williams elected to reconsider that determination and ordered another evaluation. Although this second evaluation was never completed, the trial proceeded before another judge of the Circuit Court, Judge Paul E. Alpert, and the issue of competency was not raised again by any party. We shall hold that under the circumstances, even though Peaks's trial had already commenced, the trial judge did not violate § 3-104 in determining again that Peaks was competent to stand trial.

## FACTS AND PROCEDURE

On October 12, 2004, Peaks was arraigned in the Circuit Court for Baltimore City on charges relating to events occurring between April and May of 2004.[2] Following the arraignment, defense counsel entered a plea of not criminally responsible on Peaks's behalf and requested an evaluation of his competency to stand trial. On November 4, the Circuit Court ordered the Department of Health and Mental Hygiene to perform a competency evaluation. On December 15, Peaks was referred to Clifton T. Perkins Hospital Center ("Perkins

---

examine the defendant to determine whether the defendant is incompetent to stand trial.
(2) The court shall set and may change the conditions under which the examination is to be made.
* * *
(d) *Duties of Health Department.*—
(1) If a court orders an examination under this section, the Health Department shall:
 (i) examine the defendant; and
 (ii) send a complete report of its findings to:
 1. the court;
 2. the State's Attorney; and
 3. the defense counsel.

2. Peaks was charged with attempted first degree murder, attempted first degree rape, first and second degree assault, and two counts of carrying a deadly weapon with intent to injure, in addition to possession and possession with intent to distribute narcotics.

Hospital") for evaluation of his competency and criminal responsibility. After multiple examinations and evaluations performed by various psychiatrists, a Pretrial Evaluation was submitted to the Circuit Court on April 26, 2005. The evaluators found that Peaks was "able to understand the nature and object of the charges against him and to assist in his own defense," and therefore concluded that Peaks was "competent to stand trial." Defense counsel sought to have Peaks evaluated again, because counsel was not satisfied with the initial evaluation. The Circuit Court then ordered a postponement of the trial pending an additional evaluation.

After multiple postponements for varying reasons, the case came before Judge John M. Glynn for trial on March 13, 2006. Judge Glynn asked why the case was "so old." Defense counsel responded that the delay was due to "issues regarding [Peaks's] competence, which [have] been resolved." The trial was not able to commence on that day due to the absence of a witness for the State. The case was reset for trial before Judge Williams. On November 16, 2006, the parties addressed the outstanding competency concerns:

> [DEFENSE COUNSEL]: I'm concerned Judge as far as the competency, where that—that the defendant's competency will have to be made very clear on the record that he is acting in contempt of the court but that he is competent and those issues will be (inaudible) absentia.
>
> THE COURT: I understand.
>
> [DEFENSE COUNSEL]: And it has been resolved.
>
> THE COURT: That was my understanding looking at the court file, talking to the other judges who have had him. That has been my understanding, litigated extensively.
>
> [STATE'S ATTORNEY]: Well it's never actually gone to a competency hearing. He's only been sent to the court medicals and Perkins [Hospital] and had evaluations.
>
> THE COURT: And . . .
>
> [STATE'S ATTORNEY]: He's never had a . . .
>
> THE COURT: **And that Courts having determined, after reviewing those competency requests, the courts have**

**determined that he is competent to stand trial.** So, unless there is a . . .

[DEFENSE COUNSEL]: And the defense is not making a motion . . . and without revealing anything that would jeopardize privilege, **there is no reason at this time to question his competency or his criminal responsibility.**

THE COURT: There are just some people that just decide to act out.

[STATE'S ATTORNEY]: I understand Your Honor.

THE COURT: And that seems to be what Mr. Peaks has decided to do. Hopefully, he won't do that today. But, if so, but I understand the State's concern.

[STATE'S ATTORNEY]: Well Your Honor, . . . I learned that the defense withdrew the competency—contesting the competency issues, back in the summer, I think it was August was the last trial date.

THE COURT: We're not going to go down that path.

[STATE'S ATTORNEY]: And I understand that they are not going to renew that issue.

THE COURT: And that's where it is.

(Emphasis added.)

Subsequently, the court was informed that Peaks could not attend the hearing because he had chest pains and was taken back to jail for observation or treatment. Judge Williams stated that, "the same thing happened yesterday when Mr. Peaks was here in this courtroom. He seemed to this Court to be in fine condition, but when he did not get what he wanted, which was the opportunity to discharge counsel, he then claimed that he had some heart problems or chest pains."

The case was scheduled to resume in two weeks. On November 29, Peaks again appeared before Judge Williams to begin trial. Peaks indicated that he wanted to discharge his counsel and hire a private attorney, and the parties discussed possible plea options. Peaks, however, began to act out once more. He complained that he was being "railroaded" by the government and was concerned that he was not being ade-

quately represented. He again complained of chest pains, to which Judge Williams responded, it "seems that every time that I don't do what you want me to do you complain about chest pains" and later, "it has been found that you didn't have any chest pains [when you complained about chest pains in the past]." When Peaks protested this characterization, Judge Williams stated, "Sir I believe what you are trying to do is disrupt my court proceedings. And if you do that, it is contempt of court." Peaks then began to curse and act erratically, and the Judge found him in contempt. Afterwards, the Court recessed for the day.

Peaks was brought back to court the next day to schedule another trial date. Judge Williams informed Peaks that he had a new attorney from the Public Defender's Office. The exchange continued:

> THE COURT: Sir we are in the position right now where I have to determine whether or not we can proceed with trial. I have made every attempt I can. Yesterday you told me that you have emotional issues. Do you remember telling me that sir?

> PEAKS: Sure.

> THE COURT: I'm concerned about those issues. Your ability to sit in court and assist [your attorney] has been called into question by your own actions. I am not sure that you can do that. And like I told you yesterday and like I told you before it is my desire to try these cases, because like you said you have been sitting in jail for a long period of time. I am not certain that you are competent to assist your attorney in your defense. And I am not sure about your responsibility. So for those reasons based on actions that you presented to me yesterday. Based on your outbursts yesterday. Based on reviewing paperwork of the past. I'm determining that I am ordering you to be evaluated for competency and criminal responsibility. That will be done hopefully within the next sixty days sir.

PEAKS: I had like four of them done, they say that I'm competent.

The dialogue continued between Judge Williams and Peaks, Peaks maintaining his competence and the judge explaining that an evaluation should be done to make sure he was competent to stand trial. The latest evaluation ordered by Judge Williams, however, was never completed, as explained in multiple letters from doctors at Perkins Hospital to the court, stating that Peaks could not be evaluated because he would not cooperate with them.

The trial was set to begin on June 4, 2007 before Judge Alpert. On that date, the issue of competency was not raised by defense counsel or Peaks, and was not initially addressed by the court. After advising Peaks of his rights and engaging in plea discussions, which were eventually terminated, Judge Alpert began the process of voir dire, bringing in prospective jurors and asking them questions regarding any possible bias. During this process, Peaks requested to discharge his attorney, based on his alleged belief that the attorney was not adequately representing him, informing the judge he would rather represent himself.

After performing a Rule 4–215[3] inquiry, Judge Alpert allowed Peaks to discharge his counsel. Peaks proceeded without counsel; he participated in voir dire and excused jurors after Judge Alpert asked the prospective jurors questions indicating their bias. Peaks then began to act out, yelling in court, using profanities and indicating his belief that the system was fixed against him. Once Peaks became completely unruly, Judge Alpert informed him that he would be removed from the courtroom should his behavior continue. Peaks did

---

3. Maryland Rule 4–215 (2009 Repl. Volume) applies to the waiver of counsel. Rule 4–215(a) outlines the specific procedure a court must follow, which ensures that the defendant is informed and advised of his or her constitutional rights. Rule 4–215(b) requires that the judge conduct an examination of the defendant on the record to determine that "the defendant knowingly and voluntarily waiv[es] the right to counsel."

not heed the warning and was removed from the courtroom when he refused to comply.

The next day, Peaks was brought back to the court, and given the opportunity to participate in his defense. He told the court multiple times that he did not want to participate, and he was escorted out of the courtroom. After concluding voir dire in the absence of defense counsel or Peaks, the judge informed the State that the case would proceed to trial. The State then said:

> [STATE'S ATTORNEY]: I have several pre trial issues Your Honor. The first issue is, the State already brought this up before as far as his previous plea which was subsequently withdrawn (inauditable [sic]) conference hearing. It is the understanding of the State that this Court has had plenty opportunity to engaged [sic] Mr. Peaks and find him otherwise to be competent for the purposes of continuing this trial.

> THE COURT: He'll participate in the trial. He participated to some extent in the jury selection which the record will reflect, with the assistance of [his attorneys]. He also discussed the plea, and he decided not to do the plea. **I'm satisfied that he is competent to stand trial. Without any doubt am I satisfied.**

> (Emphasis added.)

The State proceeded with its case and Peaks was convicted, by the jury, in absentia. Peaks, represented by counsel from the Office of the Public Defender, appealed his conviction to the Court of Special Appeals, claiming that Judge Alpert did not comply with § 3–104 because the judge did not make a proper determination regarding competency prior to trial. In an unreported opinion, the Court of Special Appeals affirmed the conviction, holding that "[w]e are satisfied that the court determined on the record that [Peaks] was competent to stand trial" and that there was sufficient evidence on the record to support a finding of competency. Subsequently, we granted Peaks's Petition for Writ of Certiorari. *Peaks v. State,* 415 Md. 114, 999 A.2d 179 (2010).

### DISCUSSION

We note at the outset that there is no substantive challenge to Peaks's competency. The Petitioner does not allege that he was incompetent to stand trial. Rather, Petitioner's claim is that the trial court committed a procedural error by failing to determine the issue of Peak's competency prior to the commencement of trial. With that in mind, we turn to the requirements of Maryland law.

A defendant is considered incompetent to stand trial if he or she is not able, "(1) to understand the nature or object of the proceeding; or (2) to assist in one's defense." Md.Code (2001, 2008 Repl.Vol.), § 3–101(f) of the Criminal Procedure Article; *see also Thanos v. State*, 330 Md. 77, 85, 622 A.2d 727, 730 (1993) (*quoting Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). Additionally, the substantive prohibition against the criminal prosecution of an incompetent defendant is protected by certain guarantees of procedural due process. *Trimble v. State*, 321 Md. 248, 254, 582 A.2d 794, 797 (1990).

A person accused of a crime is presumed to be competent to stand trial. *Ware v. State*, 360 Md. 650, 703, 759 A.2d 764, 792 (2000). Once the issue of competency is raised, the General Assembly places the duty to determine the defendant's competency on the trial court, in order to ensure that the requirements of due process are satisfied. *Roberts v. State*, 361 Md. 346, 363–64, 761 A.2d 885, 895 (2000). The duty of the trial court may be triggered upon motion of the accused or defense counsel, or upon *sua sponte* action of the court. *Roberts*, 361 Md. at 364, 761 A.2d at 895. As we stated in *Roberts*,[4] the language of the statute, now codified as § 3–104:

---

4. *Roberts* interpreted the precursor to § 3–104, Md.Code (1982, 2000 Repl.Vol.), § 12–103 of the Health–General Article. Section 3–104 is substantially the same, the only changes being the change of the heading of (a) from "Hearing" to "In general" and the addition in (a) of the phrase, "or a violation of probation proceeding." As we stated in *Gregg v. State*, 377 Md. 515 n. 4, 533, 833 A.2d 1040, 1050 n. 4 (2003),

[M]andates actions to be undertaken by a trial court, if an accused's competency is properly called into question. These actions can be broken down into three distinct and simple steps: (1) First, a determination of competency may be made at any time before or during a trial; (2) Second, such a determination must be made if the defendant in a criminal case appears to be incompetent to stand trial or the defendant alleges incompetence to stand trial; and (3) Finally, the court must make its determination on the evidence presented on the record.

*Id.* This mandate "indicates that the Legislature intended for every accused, whose competency was called into question, to have at least one guaranteed review of his or her competency status." *Roberts,* 361 Md. at 366, 761 A.2d at 896. Once the issue of competency has been raised, a "determination that an accused is competent to stand trial must be found beyond a reasonable doubt." *Jolley v. State,* 282 Md. 353, 365, 384 A.2d 91, 98 (1978). Additionally, competency to stand trial is a factual determination which will not be reversed unless it is clearly erroneous. *Jolley,* 282 Md. at 375, 384 A.2d at 103.

■■■■■ Additionally, the determination of the court need not be in the form of a formal hearing. *See Roberts,* 361 Md. at 368, 761 A.2d at 897. A judge with no jury present is not "required to use any magic words to designate as a separate hearing the presentation to him of testimony and evidence for his determination of the competency of the accused to stand trial. It is sufficient if the testimony and evidence are on the record." *Id.* Further, once the trial court has determined that the defendant is competent to stand trial, "the court is not required to hold an additional hearing merely because [the defendant] again alleges he is incompetent." *Trimble,* 321 Md. at 255, 582 A.2d at 798; *see also Roberts,* 361 Md. at 364, 761 A.2d at 895 ("Once an initial determination has been made, a reconsideration of the accused's competency may be made

§ 12–103 was recodified in § 3–104 of the Criminal Procedure article without substantive change.

and is controlled by the discretionary language of [§ 3–104(c) ]").

In *Trimble*, we held that the defendant was determined to be competent prior to trial pursuant to the procedure outlined in the then applicable competency statute.[5] *Trimble*, 321 Md. at 255, 582 A.2d at 797–98. During the *Trimble* trial, however, the defendant "behave[d] strangely" and defense counsel alleged on appeal that the trial court erred in failing to conduct a supplemental hearing on the issue of his competency. *Trimble*, 321 Md. at 255, 582 A.2d at 798. We rejected that argument, noting that "any questions posed directly to [the defendant] at trial were answered appropriately" and holding that the "trial judge could have concluded that the behavior was designed only to disturb the proceedings and was not the result of any real incompetency." We therefore held that another hearing or determination on competency was not necessary. *Trimble*, 321 Md. at 256, 582 A.2d at 798.

Having outlined the procedural requirements of a competency determination, we need to clarify what evidence may be reviewed by a judge in determining competency. In *Jones v. State*, 280 Md. 282, 285, 372 A.2d 1064, 1066 (1977), the trial judge reviewed, *in camera*, a psychological report that was completed under the jurisdiction of juvenile authorities. After reviewing the report, the trial judge determined that the defendant was competent to stand trial. *Id.* In deciding the case, we stated that "before the trial may properly commence or continue, given a sufficient allegation of incompetency . . . the trial court is first required to make a determination of the defendant's competency" based on evidence presented on the record. *Jones*, 280 Md. at 289, 372 A.2d at 1068; *see also* § 3–104(b) ("If, *after* receiving evidence, the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue") (emphasis added). We noted that "[f]ailure to determine

---

5. *Trimble* applied the predecessor statute to § 3–104, Md.Code (1982, 1990 Rcpl.Vol.), § 12–103 of the Health–General Article. *See Trimble*, 321 Md. at 255, 582 A.2d at 797 (quoting § 12–103).

competency 'upon testimony and evidence presented on the record' as required by the statute, nullifies not only the determination itself but also the trial and resulting conviction." *Jones*, 280 Md. at 289, 372 A.2d at 1068. We therefore held that the trial court erred "in resting its determination of competency on matters outside the record in contravention of the statute." *Jones*, 280 Md. at 287, 372 A.2d at 1067.

In *Roberts v. State, supra,* we also held that the trial court erred in failing to comply with the competency statute. In *Roberts,* the defendant was charged with first degree murder and related offenses. *Roberts*, 361 Md. at 349, 761 A.2d at 887. The defendant requested a mental examination to determine her competence to stand trial, but the motion was denied by the trial judge without a hearing. *Id.* We stated that the trial court in *Roberts* had "no basis for finding that the examination was or was not necessary," emphasizing that there was no evidence on the record regarding Mr. Roberts's incompetence. *Roberts*, 361 Md. at 371, 761 A.2d at 898. We stated that "[w]hile we do not say that a formal hearing on the merits is required in all circumstances . . . an accused must be afforded an opportunity to present evidence upon which a valid determination can be made." *Roberts*, 361 Md. at 356, 761 A.2d at 891. *See also Colbert v. State,* 18 Md.App. 632, 642, 308 A.2d 726, 732, *cert. denied,* 269 Md. 756 (1973) (holding that there need not be a separate hearing for the presentation of evidence). We held, in *Roberts,* that the trial court erred in denying the motion without a hearing, because Mr. Roberts was not provided the opportunity to present evidence regarding the issue of competency. *Roberts*, 361 Md. at 369, 761 A.2d at 897.

In deciding *Roberts,* we relied on *Sangster v. State,* 312 Md. 560, 541 A.2d 637 (1988), in which we discussed the legislative history of the competency statute in great detail, and we reiterated that the legislative intent in passing the statute was to "mandate [the] precise actions to be taken by a trial court when an accused's competency to stand trial was questioned." *Roberts*, 361 Md. at 363, 761 A.2d at 894. In *Sangster,* we discussed what type of evidence satisfies the statute. The

defense in *Sangster* moved for a determination of competency, and the court ordered an evaluation to be performed at Perkins Hospital. *Sangster*, 312 Md. at 562–63, 541 A.2d at 638. Mr. Sangster was then evaluated by four psychiatrists, who determined that he was competent, and dictated their findings in a conference note which was sent to the court. *Sangster*, 312 Md. at 563, 541 A.2d at 638. This note was submitted at a competency hearing, in addition to the testimony of a defense witness, and the court ruled that Mr. Sangster was competent beyond a reasonable doubt. *Sangster*, 312 Md. at 564, 541 A.2d at 639.

The issue in *Sangster* was whether the statute required the live testimony of examining physicians, in addition to the report produced by the physicians, in order for the court to rule on the issue of competency. *Sangster*, 312 Md. at 566, 541 A.2d at 639–40. In deciding this issue, we evaluated the meaning of the phrase "evidence presented on the record," found in the predecessor to § 3–104.[6] *Sangster*, 312 Md. at 566–73, 541 A.2d at 640–43. We determined that because the statute authorizes the court to order the Health Department to conduct a competency evaluation, and further directs that the report shall be provided to the court, the defense counsel, and the State's attorney, "the statute itself ensures that the arbiter and the adversaries are equally informed of the report's content. In this way, the statute makes the report 'evidence on the record' for consideration at the competency hearing to the same extent as if the report were formally offered and marked as an exhibit at the hearing." *Sangster*, 312 Md. at 568, 541 A.2d at 640; *see* § 3–105(a) and (d) of the current Criminal Procedure Article. We held that the trial court was able to evaluate Sangster's competence "not only in the light of Sangster's testimony and observed conduct, but also in light of the opinions expressed by the examining physicians at Perkins in their report" and therefore there was

---

**6.** *Sangster* discussed § 12–103 and 12–104 of the Health–General Article. *See infra,* footnote 6, regarding § 12–103. Section 12–104 was substantially recodified in the current Criminal Procedure Article, § 3–105.

sufficient evidence on the record to determine Mr. Sangster's competence to stand trial even absent live testimony. *Sangster*, 312 Md. at 576, 541 A.2d at 645.

■ The observation of the defendant's behavior may also be considered "evidence on the record" which might support a determination on the issue of competency. In *Gregg v. State*, 377 Md. 515, 547, 833 A.2d 1040, 1059 (2003), we held that the defendant's behavior during the trial did not result in a *sua sponte* duty to inquire into the defendant's competency. We stated that although the defendant's behavior was "stubborn and argumentative," the defendant "responded appropriately to the judge's questions ... [and] he demonstrated both a rational understanding of the proceedings in which he was involved and of the relevant facts." *Id.*

■ Similarly, in *Thanos v. State*, 330 Md. 77, 87, 622 A.2d 727, 731 (1993), we held that the court did not err in not conducting a competency hearing. There, the issue of competency was never raised or alleged by the defendant or his counsel during the trial. *Thanos*, 330 Md. at 85, 622 A.2d at 730. Rather, on appeal the defendant alleged that the court had a *sua sponte* obligation to question his competency based on his behavior during the proceedings. *Thanos*, 330 Md. at 85, 622 A.2d at 731 (referencing "whimsical" decisions and strange remarks in addition to his general history of mental illness). We stated that, while "Thanos did make some peculiar remarks to the trial judge, his words on the whole were very lucid. He appeared to grasp all of his rights as they arose throughout the proceedings." *Thanos*, 330 Md. at 86, 622 A.2d at 731. Therefore, observation of a defendant's behavior in court can inform a trial judge's actions regarding competency. *See also Muhammad v. State*, 177 Md.App. 188, 266, 268, 934 A.2d 1059, 1105, 1106 (2007) (stating "a trial judge's observation of a defendant in the courtroom can be critical and dispositive evidence on the issue of competence to stand trial" and concluding that "there were facts and circumstances before [the judge], including significantly his own

firsthand observations, that amply supported that final decision.").

■ Turning to the case at hand, the Petitioner alleges that the procedural requirements of the statute were triggered when Judge Williams ordered a competency evaluation during the hearing on November 30, 2006. Because this evaluation was never completed, the Petitioner claims that a determination regarding competency was not made prior to the start of trial and thus the trial court violated § 3–104(a). The Petitioner also contends that the trial court must make an explicit determination on the record in order to comply with the procedure set forth in § 3–104, which was not done here. Petitioner finally argues that even if an explicit determination is not required, the trial court did not have sufficient evidence upon which to base a competency determination in this case, and alleges that Judge Alpert made a determination based solely upon Peaks's behavior in Judge Alpert's courtroom.

Conversely, the State contends that there is "no requirement that a competency determination be explicitly announced on the record." The State argues instead that only the evidence upon which the court bases its determination must be on the record, but the determination itself may be implied. The State also argues that the statute only requires that the defendant have an opportunity to be heard, though not necessarily through a formal hearing. Finally, the State argues that the trial court properly relied upon observations of the defendant's behavior, in addition to psychological evaluations, in determining that Peaks was competent to stand trial.

Although we agree with the State that a determination need not be made explicitly in a separate hearing, in our view, both parties fail to appreciate the significance of certain events in this case. When Peaks came before Judge Williams on November 16, 2006 for trial, the defense attorney brought the issue of competency to the judge's attention. Defense counsel asked the judge to make a determination "very clear on the record that [Peaks] is acting in contempt of the court and that he is competent" and further stated that the issue "has been

resolved." The court agreed that the issue was resolved. Judge Williams stated that, after "looking at the court file, talking to the other judges who have had him.... My understanding [is that the issue of Peaks's competency has been] litigated extensively." Clearly at this point Judge Williams had reviewed the evidence on the record and had the opportunity to observe Peaks's behavior. The State then pointed out that there had not been a formal competency hearing conducted. The court responded by saying that "after reviewing [the] competency requests, the courts have determined that he is competent to stand trial."

Apparently satisfied with this determination, defense counsel then stated that the defense was not making a motion regarding competency and that "there is no reason at this time to question [Peaks's] competency or his criminal responsibility." The court then concluded, "some people just act out." At this proceeding before Judge Williams on November 16, there was significant evidence on the record which, in addition to Judge Williams's personal observation of the defendant, provided a sufficient basis to support the conclusion that Peaks was competent, beyond a reasonable doubt, to stand trial. Thus, a separate competency hearing was neither necessary nor required. This exchange between Peaks, his counsel and the court, coupled with the ultimate pronouncement by the Judge, in our view, comprises the "determination" which the Petitioner alleges never occurred, and the opportunity to be heard as required by *Roberts*.

Notwithstanding his declaration on the record on November 16 that the issue was resolved and that Peaks was competent to stand trial, subsequently, on November 30, Judge Williams ordered an additional competency evaluation. Judge Williams's order came in the wake of a hearing on November 29, during which Peaks became extremely unruly, threatened the court, and was held in contempt. When Peaks returned to court on November 30, Judge Williams expressed concern for Peaks's ability to "sit in court and assist" his attorney and stated that "based on the outbursts" of the previous day, the court was ordering a competency evaluation. The Petitioner,

however, mistakenly characterizes this order as the trigger for the application of § 3–104(a), thus arguing that a subsequent determination, before the commencement of trial, of competency was required.

The correct characterization of Judge Williams's order, however, is that he was simply reconsidering his previous determination with regard to Peaks's competency, consistent with the dictates of § 3–104(c). Section 3–104(c) states that "*at any time before final judgment,* the court may reconsider the question of whether the defendant is *incompetent* to stand trial." (Emphasis added.) Specifically, subsection (c) of the statute authorizes a judge to reevaluate a defendant's possible incompetence, after the defendant has been determined competent under § 3–104(a). A reconsideration entails considering evidence and making a decision based on that evidence. Unlike § 3–104(a), however, a reconsideration may be made, within the court's discretion, at any time before final judgment. This allows a judge to observe the defendant and take into account any evidence presented on the record during the course of the proceedings. Neither subsection (c) nor the other provisions of § 3–104 specify a time limit on when the court, after determining that reconsideration is warranted, must render a determination on the record. Because subsection (c) is discretionary, that requirement suggests that a judge must make his or her redetermination of the defendant's competency to stand trial, on the evidence presented on the record, but, within a reasonable time before final judgment.

Further, within the meaning of subsection (c), it is the obligation of the court, and not exclusively the judge who requested the evaluation, to make the competency determination. In this case, Judge Williams requested reconsideration of Peak's competency by ordering another evaluation. Because of scheduling conflicts, the case was then reassigned to Judge Alpert for purposes of trial. When Peak's trial before Judge Alpert commenced, the issue of reconsideration of Peaks's competency was still outstanding, and thus needed to be resolved, within a reasonable time, prior to final judgment.

Here, we are satisfied, the trial judges involved acted within a reasonable time, within their discretion to reconsider, to monitor and, to rule, on Peaks's competency on the basis of the evidence on the record.

Judge Williams made a determination, under § 3–104(a), that Peaks was competent on November 16. Judge Williams acted properly in continuing to monitor Peaks's competence, and acted within his discretion in ordering another evaluation based upon his observation of Peaks's courtroom behavior. The decision to order another competency evaluation did not constitute a reversal or vacation of the November 16 determination. Judge Williams's order to reevaluate Peaks's competency, consistent with subsection (c), merely triggered a review of the issue, which the court could have reconsidered at any time before final judgment.

 When the case came before Judge Alpert, the reevaluation ordered by Judge Williams had not been completed. The court was, however, aware of the prior history of the case and was informed that the evaluation could not be completed because Peaks was uncooperative. Not unlike Judge Williams, Judge Alpert properly monitored Peaks's behavior in order to make his decision as required by § 3–104(c). Judge Alpert discussed the incomplete evaluation on the record, stating that "[Peaks] would not cooperate with the people who wanted to examine him so they couldn't examine him." Judge Alpert continued:

[T]here ha[ve] been efforts to have him plea not criminally responsible, but then he would not cooperate in order to determine his mental capacity. It appears to me based upon what I know of the record and what I see here that he is really trying to manipulate the system … Because this morning he was quite coherent. He was quite coherent. . . .

And it is possible that at some later point depending on what happens, he could possibly be sent to the Clifton T. Perkins Mental Hospital, possibly I don't know that. But at this point all I can do is go on with trial.

At trial, Peaks participated in voir dire and engaged in extensive discussions with Judge Alpert, who repeatedly

checked to make sure Peaks understood the proceedings. Peaks responded affirmatively when asked if he was familiar with the charges, he indicated his understanding of the judge's explanation about bench conferences, and he participated in a discussion regarding a possible plea agreement, including the possibility of an *Alford* plea, and the impact of a suspended sentence. Peaks also exhibited his understanding regarding the jury selection process in asking follow-up questions during voir dire and striking prospective jurors. Peaks even stated that he wanted to discharge his attorney because he believed there was no defense "strategy" being employed. Peaks was lucid at the start of the proceedings and after observing the subsequent vacillation in Peaks's behavior, the judge determined that Peaks was only attempting to manipulate the court.

Based on these factors, there was not sufficient evidence on the record to rebut the presumption of competence, the court having determined Peaks's competency on November 16. Despite the lack of the subsequent evaluation ordered by Judge Williams (which was defeated by Peaks's refusal to cooperate with the psychiatrists), Judge Alpert did everything within his authority and abilities to adequately address Judge Williams's concerns. When a defendant prevents an evaluation of competency through his or her behavior, a judge may make his or her determination based on the evidence on the record, despite the absence of a formal medical evaluation. Through no fault of either judge in this matter, there was no additional psychiatric or psychological evaluation for the court to consider. Judge Alpert could observe that Peaks was competent and that Peaks's unruly behavior was the result of his desire to manipulate or disrupt the court proceedings, and not sufficient or credible evidence of incompetence.[7]

Additionally, the letter sent by Perkins Hospital to Judge Alpert, a copy of which was sent to both parties, informed the

---

7. Certainly we do not suggest that, in other cases, the lack of a completed evaluation will result in a sustainable finding of competency. This case is the exception in that the defendant previously completed

court that the evaluation could not be completed because Peaks was uncooperative, and further stated that the defense filed a motion to rescind the outstanding order for the evaluation.[8] The record indicates that Judge Alpert read this letter prior to the proceedings because he referred to it multiple times throughout the hearing. On the day of trial, defense counsel did not make a motion with respect to competency or challenge the lack of a completed evaluation. Had defense counsel considered the issue still outstanding, he had every opportunity to object to the characterization and bring the issue to the court's attention at that time.

We agree with the Court of Special Appeals's conclusion that the "[f]acts indicate that [Peaks] had 'sufficient present ability to consult with his lawyer with a reasonable degree of understanding' and a 'rational as well as factual understanding of the proceedings against him.'" (*quoting Dusky*, 362 U.S. 402, 80 S.Ct. 788). Peaks's actual competence, however, is not at issue. Thus, we need only decide if Judge Alpert was clearly erroneous in not making an explicit determination, with regard to Peaks's competency, until after voir dire was completed.[9] Once the determination regarding

multiple examinations and the court had already made a determination as to his competency prior to the unsuccessful evaluation attempted here.

8. The letter to Judge Alpert stated, "We have spoken to [the defense attorney]. He stated that he filed a motion to rescind the order for psychiatric examination." The assertion made by the Director of Pretrial services at Perkins, that the defense counsel moved to rescind Judge Williams's order, is not substantiated by the record. It is unclear from the record whether the defense counsel did in fact make such a motion because we could not find a copy of the motion in the court file or a docket entry. The possibility of a mistake, however, does not affect the outcome of this case. Defense counsel did not challenge the statement from the hospital or renew the issue, and, in failing to do so, implicitly affirmed the understanding of the court that competency and the subsequent evaluation were no longer at issue.

9. The Petitioner's question concerns the timing of the competency determination. In addition to the timing of the determination that

competency was made prior to trial by Judge Williams, Peaks, effectively, was determined competent to stand trial as a matter of law. Consistent with § 3–104(c), Judge Williams sought to reconsider his determination as to Peaks's competency. Thus, Judge Alpert, as the presiding judge at trial, had to assess the sufficiency of the evidence of incompetence, to rebut Judge Williams's earlier determination that Peaks was competent to stand trial, and make a determination, prior to final judgment, regarding any reconsideration of Peaks's competency prior to final judgement. The evidence presented on the record was not sufficient or credible to rebut the earlier determination that Peaks was competent to stand trial. Just before opening statements, the State presented the trial judge with pretrial issues, and stated that the "understanding of the State [is] that this [c]ourt has had plenty of opportunity to engaged [sic] Mr. Peaks and find him otherwise competent for the purposes of continuing in this trial." Judge Alpert responded, "I'm satisfied that he is competent to stand trial. Without any doubt I am satisfied." Judge Alpert's confirmation that Peaks was competent to stand trial satisfied Judge Williams's earlier request to reconsider Peaks's competency and was consistent with § 3–104(c). We therefore hold that Judge Williams's and Judge Alpert's rulings with regard to Peaks's competency were proper and consistent with the requirements of § 3–104.

---

Peaks was competent to stand trial, the Petitioner argues that the trial court erred in failing to make a competency determination prior to Peaks's discharge of counsel, stating that where "competency was already at issue, the trial court's failure to determine Petitioner's competency prior to allowing him to discharge counsel" was also error. This argument rests on the premise that Judge Alpert failed to properly address Peaks's competency and in so doing deprived him of a fair trial. According to Petitioner, we should adopt a higher standard for competency to discharge counsel, and thus even if a timely determination was made, the court did not use the proper standard. Under Maryland law, however, the standard for competency to stand trial and to discharge counsel are the same. *See Gregg v. State*, 377 Md. 515, 537, 833 A.2d 1040 (2003). Because we conclude that Petitioner's competency was properly addressed both before and during trial and that there is no allegation that Peaks was actually incompetent, we find no merit to this argument in the context of this case.

264

JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.