*Kivi Kennedy v. State of Maryland*, No. 51, September Term 2013, Opinion by Greene, J.

**CRIMINAL LAW – COMPETENCY TO STAND TRIAL**

In order for defense counsel to trigger a trial judge's duty to determine a criminal defendant's competency to stand trial under Md. Code (2001, 2008 Repl. Vol), § 3-104(a) of the Criminal Procedure Article, defense counsel's motion or request for a competency determination must be "sufficiently clear." Counsel must make known to the court the action that the party desires the court to take and, in the present situation, defense counsel's vague request to have Petitioner "evaluated" was not sufficiently clear to alert the trial judge to his duty.

Circuit Court for Baltimore City
Case No.: 110077027, 28, 29
Argued : January 14, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 51
September Term, 2013

---

KIVI KENNEDY

v.

STATE OF MARYLAND

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,


JJ.

---

Opinion by Greene, J.
Harrell and Battaglia, JJ., dissent

---

Filed: February 21, 2014

At issue in this appeal is whether defense counsel's request to have Petitioner "evaluated," under the circumstances, was sufficiently clear to trigger Md. Code (2001, 2008 Repl. Vol.), § 3-104(a) of the Criminal Procedure Article, which requires the trial court to determine whether the defendant was competent to stand trial based on evidence presented on the record. We shall hold that defense counsel did not trigger the trial judge's duty to make a competency determination, and we therefore affirm the judgment of the Court of Special Appeals.

### FACTS AND PROCEDURAL HISTORY

Petitioner Kivi Kennedy ("Kennedy" or "Petitioner") was charged with first degree murder, two counts of attempted first degree murder, and related weapons offenses stemming from a 2010 Baltimore City shooting death. The circumstances leading to the charges against Petitioner in this case are largely irrelevant to this appeal, and a brief recitation of those facts are included only to provide context. The State's evidence showed that on February 25, 2010, Petitioner arranged to meet his friend, Kevin Newsome, at the intersection of Fulton Avenue and Baker Street in Baltimore City. Newsome arrived with two people, Dejuan Green and Kelly Roy, in his truck with him. Petitioner got in the backseat of Newsome's truck and subsequently shot Newsome, Green, and Roy. Petitioner fled on foot. Newsome and Roy were treated for gunshot wounds and released, and Green was pronounced dead at the hospital as a result of three close range gunshot wounds to the head.

Pertinent to this appeal are certain events that transpired over the course of Petitioner's jury trial. On the first day of trial, during cross-examination of Kevin Newsome,

the State's first witness, Petitioner began crying. Defense counsel requested a break in the proceedings, and the trial judge dismissed the jury to the jury room. Counsel approached the bench, and the following colloquy ensued:

> [Defense Counsel]: And, Your Honor, this is something that I showed Judge Peters that I couldn't relate to my client and he wouldn't come visit me when I would go to the jail and he refused to come to court one day and–
>
> [Trial Judge]: Well, do you know what provoked his reaction?
> . . . .
>
> [Defense counsel]: I can't, I can't tell if, I mean, as a layman, not as a professional doctor, I haven't been able to really communicate with this guy. He like, I'll say somethin' to him and he'll say the same thing over and over again, like he didn't hear what I said to him. And I tried to express that to Judge Peters before he sent us here. I'm not askin' for a mistrial or anything like that, but I did – you heard me tell Judge Peters that.
> . . . .
>
> [Prosecutor]: Do you think there's something wrong with him?
>
> [Defense Counsel]: Yes.
> . . . .
>
> [Trial Judge]: If you are requesting any relief, do you want the evening break now?
>
> [Defense Counsel]: Yes, if we could.
>
> [Prosecutor]: Fine. That's fine.

When the trial resumed the following day, defense counsel made no reference to the day before, nor did he request any relief. The State continued to call witnesses on the second and third days of trial, all without incident. Several times throughout the trial, Petitioner asked clarifying questions of the judge, including why his motion for judgment of acquittal

2

was denied, and what it meant to impeach him. Following explanation by the judge, Petitioner stated that he understood in both instances. Petitioner, defense counsel, and the trial judge also engaged in a discussion regarding Petitioner's right to testify or not to testify. Ultimately, Petitioner decided to testify, and during his testimony, he explained why he cried on the first day of trial:

> [Petitioner]: I cried because we all [sic] here today 'cause of me. That's why we here today 'cause of the situation and I'm sittin' over there as somebody who committed these crimes. I cried yesterday 'cause I almost lost my life that night and I didn't shoot anybody. And I'm tellin' ya'll that and I'm tellin' the family that I did not shoot your family.

Petitioner then testified about the events leading to his arrest. He stated that an unidentified man approached the vehicle where Petitioner was seated and pulled a gun on him, and thereafter, a struggle between Petitioner and the unidentified individual ensued. During cross-examination, the prosecutor asked Petitioner to re-enact this alleged struggle over the gun with her using a magic marker as a prop. In the process of re-enacting this struggle, Petitioner used enough force to cause the prosecutor to fall back several steps and collide with the courtroom easel. Immediately following the incident, Petitioner said "I'm sorry, I'm sorry" and "I didn't mean it." The jury was excused, and Petitioner continued to apologize and asked if the prosecutor was alright. The following colloquy then ensued:

> [Defense Counsel]: Your Honor, at this time I would ask the Court for a mistrial. I believe the jury has been prejudiced. They now have an impression of my client based on the State's Attorney requesting him to demonstrate. I, I believe I noticed the jury's reaction. Everyone was shocked and I believe the jury's tainted. And I don't believe my client will be given a fair trial, not because of the evidence that was presented, but because of the incident that

3

just occurred that was provoked by [the prosecutor].

[Trial Judge]: Well, let's, let me put on the record, although there is a video which may show what occurred, let me state that [the prosecutor] asked the witness while standing outside of the box, he was sitting in the box, to demonstrate how he tussled for the gun using a marker. And it is this [c]ourt's finding that it was not provoked in any way by the State, that Mr. Kennedy, I guess lacks all judgment, but used strong force, enough to push [the prosecutor] several feet back and knock over the easel, far beyond anything that would ever be done in a re[-]enactment or demonstration. So I reject the notion that the State has provoked anything in the Defendant's conduct.

After the trial judge denied the motion for mistrial, defense counsel asked to approach the bench, and thereafter the following discussion occurred:

[Defense Counsel]: Your Honor, I would express again that this is a continuous situation with myself and [Petitioner]. At several times I have problems communicating with him. I communicate directly with him and he seems not to understand what I'm saying to him. Your Honor, I don't–

[Trial Judge]: Well, how is this incident the result of a communication problem?

[Defense Counsel]: Well, it's, it's something consistent I've seen in [Petitioner] as far as a lack of understanding with things. If we attribute it to he used too much force and improper force, I would consistently say this is what I've experienced with him, a lack of understanding of things I say to him. I don't understand things that he says to me at times. **I haven't been able to talk to him about the case and I would just ask the Court for a mistrial –**

**[Trial Judge]: All right. The motion is –**

**[Defense Counsel]: – and have him evaluated.**

[Trial Judge]: The motion is denied. As I've said in connection with this incident, I think it's a lack of judgment. (Emphasis added.)

Thereafter, the prosecutor requested to proceed with the trial, and defense counsel

4

stated: "I would just make a last argument. This could be misconstrued by the jury as my client being violent and he's, he's been prejudiced by this act and I'll submit on that. Thank you." The trial judge then responded that the "[m]otion for mistrial is denied," which was his third time doing so. Cross-examination of Mr. Kennedy was completed without incident.

At the conclusion of trial, the jury convicted Petitioner of second degree murder, two counts of attempted second degree murder, three counts of use of a handgun in a crime of violence, and one count of wearing, carrying or transporting a handgun. Petitioner was sentenced to 65 years incarceration. Petitioner noted a timely appeal. The Court of Special Appeals affirmed the judgment of the Circuit Court for Baltimore City in an unreported opinion. This Court granted *certiorari*, *Kennedy v. State*, 432 Md. 211, 68 A.3d 286 (2013), to answer the following question:

> Did defense counsel trigger the competency statute, requiring the trial court to order a competency evaluation and make a competency determination, when counsel informed the court that he had trouble communicating with his client and that his client was unable to assist in his defense, mentioned that there was "something wrong" with his client, and requested that his client be evaluated?

**DISCUSSION**

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 903, 43 L. Ed. 2d 103, 112-13 (1975). Once the issue of a defendant's competency has been raised, the proceedings cannot continue until

5

the trial judge determines that the defendant is competent to stand trial beyond a reasonable doubt. *Peaks v. State*, 419 Md. 239, 252, 18 A.3d 917, 925 (2011). "Additionally, competency to stand trial is a factual determination which will not be reversed unless it is clearly erroneous." *Id.* The proper procedure the trial court must follow when determining a criminal defendant's competence to stand trial is codified in Md. Code (2001, 2008 Repl. Vol.), § 3-104(a) of the Criminal Procedure Article (hereinafter § 3-104(a)), which states:

> If, before or during a trial, the defendant in a criminal case or a violation of probation proceeding appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial.

A person is incompetent to stand trial when he or she is unable "(1) to understand the nature or object of the proceeding; or (2) to assist in one's defense." Md. Code (2001, 2008 Repl. Vol.), § 3-101(f) of the Criminal Procedure Article (hereinafter § 3-101(f)).

This Court has visited the procedures mandated by § 3-104(a) many times,[1] and has determined that, when an accused's competency is properly called into question, the actions that must be undertaken by the trial judge can be distilled into three steps: "(1) First, a determination of competency may be made at any time before or during a trial; (2) Second, such a determination must be made if the defendant in a criminal case appears to be

---

[1] This statute was formerly Md. Code (1982, 1987 Cum. Supp.), § 12-103 of the Health- General Article, and some cited cases, including *Roberts v. State*, 361 Md. 346, 761 A.2d 885 (2000), interpret that prior codification. No substantive changes were made when the statute was recodified as § 3-104(a).

6

incompetent to stand trial or the defendant alleges incompetence to stand trial; and (3) Finally, the court must make its determination on the evidence presented on the record." *Roberts v. State*, 361 Md. 346, 364, 761 A.2d 885, 895 (2000).

At issue in the present case is the second step, which delineates the appropriate avenues to bring the issue of competency properly before the court. "As the statute makes plain, a trial court's duty to determine the competency of the accused is triggered in one of three ways: (1) upon motion of the accused; (2) upon motion of the defense counsel; or (3) upon a *sua sponte* determination by the court that the defendant may not be competent to stand trial." *Thanos v. State*, 330 Md. 77, 85, 622 A.2d 727, 730 (1993). An allegation of competency must be "sufficient" to alert the trial court to its duty to determine whether the defendant is competent to stand trial. *Cf. Jones v. State*, 280 Md. 282, 286-87, 372 A.2d 1064, 1067 (1977) (concluding that the Court of Appeals need not decide whether defense counsel's allegations of competency were sufficient because the trial judge regarded the statements as adequate for that purpose). Petitioner asserts only that § 3-104(a) was triggered upon motion of the defense counsel.[2]

Petitioner contends that § 3-104(a) was triggered by defense counsel's motion based on several occurrences: that defense counsel informed the trial judge he had trouble communicating with his client and that he believed there was "something wrong" with him,

---

[2] Petitioner's counsel conceded at oral argument that the trial judge did not have a duty to raise the issue of competency *sua sponte*.

7

and when defense counsel requested Petitioner be "evaluated." Respondent, meanwhile, asserts that defense counsel failed to trigger the competency determination requirement under § 3-104(a) where the request was embedded in a motion for mistrial, the request was not pursued despite ample opportunities to do so, and any proffered facts did not raise a bona fide doubt as to Petitioner's competency. We agree with Respondent, and shall hold that defense counsel's passing request to have Petitioner "evaluated" was not sufficient to trigger the trial judge's duty to make a determination of competency.

While it is not necessary for a party to "recite a specific litany" to request a course of action by the trial court, *see In re Ryan S.*, 369 Md. 26, 34, 797 A.2d 39, 44 (2002), a party must sufficiently "make[] known to the court the action that the party desires the court to take or the objection to the action of the court." *See* Md. Rule 4-323(c) (codifying the method of making objections, including motions for a mistrial). If a party "clearly makes the judge aware of the course of action he or she desires the court to take and the reasons for such course of action, the party shall have adequately preserved that issue for appellate review." *In re Ryan S.*, 369 Md. at 35, 797 A.2d at 45. Indeed, it will not always be necessary for defense counsel to recite the specific words "competency determination" when making such a request. In the present case, however, defense counsel did not make his request known to the court with sufficient clarity to trigger the requirements under § 3-104(a). Here, the only instance in which defense counsel could possibly have requested that the trial judge make a determination of Petitioner's competency was when he made a vague request to have

8

Petitioner "evaluated." This "request" was made at the end of a long colloquy with the trial judge regarding defense counsel's motion for a mistrial, and was actually made after the trial judge had already begun ruling on that motion.

Moreover, despite defense counsel's persistence in renewing the motion for mistrial, his request to have Petitioner "evaluated" was never pursued, even though there were ample opportunities to do so. Petitioner argues that defense counsel's assertions that he had trouble communicating with Petitioner and he did not think Petitioner understood him were further support of the sufficiency of defense counsel's motion for a competency determination. In our view, the only remedy that defense counsel sought in this case was a mistrial. These statements, concerning counsel's lack of communication with his client, were made in the context and in support of a motion for mistrial. There is no clear indication that the comments were offered as a basis for challenging Petitioner's competency to stand trial.

It is important to consider the circumstances in which defense counsel made the request to "have him evaluated." As evident from the trial transcript, this request was made where the focus of the motion was for a mistrial. The decision the trial judge must undertake when determining whether to grant a motion for mistrial is entirely different from the decision to grant a request for an evaluation to determine competency to stand trial. This Court has explained that, when a defendant makes a motion for a mistrial, "[t]he question is whether the prejudice to the defendant was so substantial that he was deprived of a fair trial[.]" *Kosmas v. State*, 316 Md. 587, 594-595, 560 A.2d 1137, 1141 (1989). The motion

9

made by defense counsel that is at issue here was made following the defendant's botched re-enactment of his struggle to take away the gun that allegedly took place when the underlying crimes occurred. The trial judge's focus was clearly on whether this re-enactment was so prejudicial that the proceedings should be aborted. This is an entirely different analysis than the analysis a trial judge engages in to decide whether to grant a request to delay proceedings in order to evaluate the defendant's competency to stand trial. In that situation, the judge must decide ultimately, prior to resumption of proceedings, whether the defendant understands the nature of the proceedings and is able to assist in his own defense. *See* § 3-101(f). Because of the vague nature of defense counsel's request to "have him evaluated," and without further clarification that the request was for a competency evaluation, the trial judge's attention was clearly on the prejudicial nature of what occurred in front of the jury and not on whether defendant required a competency evaluation.

In addition, defense counsel's request to "have him evaluated" is not sufficiently clear as to the type of evaluation defense counsel was requesting. There are several different types of "evaluations" in the criminal context, all of which could feasibly be the type of evaluation defense counsel intended to request. For example, defense counsel here could have been referring to a court ordered evaluation of Petitioner for alcohol and drug abuse. *See* Md. Code (1982, 2009 Repl. Vol.), §§ 8-505–06 of the Health-General Article (codifying the procedures for committing a criminal defendant for an alcohol or drug abuse evaluation and mandating that such orders may be ordered during trial). Additionally, defense counsel could

10

have been requesting an evaluation pursuant to a potential plea of not criminally responsible, Md. Code (2001, 2008 Repl. Vol.), § 3-110 of the Criminal Procedure Article, or an emergency evaluation if counsel believed the defendant presented a danger to himself or others, Md. Code (1982, 2009 Repl. Vol.), § 10-622 of the Health-General Article. Because defense counsel requested to "have him evaluated" following a violent display by Petitioner, all three of the above alternative evaluations were plausible requests defense counsel could have intended to make.

Despite Petitioner's attempt to compare the present case to *Roberts*, 361 Md. 346, 761 A.2d 885, and *Hill v. State*, 35 Md. App. 98, 369 A.2d 98 (1977), both cases are readily distinguishable and illustrate requests for a competency determination that are sufficiently clear so as to trigger the trial judge's duty under § 3-104(a). In *Roberts*, defense counsel filed a written Motion to Request Mental Examination with the trial court. 361 Md. at 354-55, 761 A.2d at 890. In general, the motion provided that defendant had a long history of psychiatric problems, that counsel had difficulty communicating with defendant, and that both of defendant's physicians believed she should have been placed in a psychiatric hospital. *Id.* The Motion concluded by stating that

> Ms. Roberts, through counsel[,] asks this Court to issue an order that she be evaluated by a suitable licensed or certified examiner . . . . Counsel believes that this examination is very necessary and should be done as soon as possible . . . . If the Court believes that a hearing on the issue of competency is necessary or if any additional information is required, counsel would be more than happy to provide same.

*Roberts*, 361 Md. at 355, 761 A.2d at 890. To be sure, this motion made by defense counsel

11

in *Roberts* was a model of clarity. Although such an extensive proffer is not necessary–indeed, "a defendant merely needs to . . . allege incompetence in order to trigger the need for a competency determination," *Roberts*, 361 Md. at 365 n.14, 761 A.2d at 895 n.14–it does clearly and unequivocally alert the trial judge of his or her duty to make a determination of competency. In the present case, the defense counsel did not allege incompetence with any clarity and this situation is therefore distinguishable from *Roberts*.

> In *Hill*, on the second day of trial, defense counsel informed the trial judge that
>
> Defendant indicated to me further for the first time yesterday evening that one time [last year] he had been at Clifton T. Perkins for seven months for some type of evaluation. He indicated he wishes me to interpose a plea of . . . not guilty by reason of insanity at the time of the alleged commission of the offense *and is not competent to stand trial at this time.*

35 Md. App. at 99, 369 A.2d at 99 (emphasis in original). We agree with the intermediate appellate court in *Hill* that "[t]he language used by trial counsel unequivocally directed the attention of the trial court to the dual issues (a) of insanity . . . and (b) of the competency of the accused to stand trial." 35 Md. App. at 104, 369 A.2d at 101. Indeed, there is no question as to what defense counsel in *Hill* was requesting. Although defense counsel in *Hill* did make a motion with dual purposes, namely a desire to enter a plea of not guilty by reason of insanity and a request for a determination of defendant's competency to stand trial, both requests were made with equal weight in order to alert the trial judge to the dual issues with sufficient clarity. That, however, is not this case. Here, defense counsel made several motions for a mistrial throughout Petitioner's trial and, only at the end of a long colloquy

12

with the trial judge about the reasons for mistrial, did counsel make a vague request to "have him evaluated." There is nothing "sufficiently clear" about this request to alert the trial judge to his duty under § 3-104(a).

The situation in *State v. Northam*, 421 Md. 195, 26 A.3d 344 (2011), is more comparable to the present case, and while it is not a case involving competency, we agree with the intermediate appellate court that it is instructive. In *Northam*, the defendant filed a motion for a change of venue, which listed several reasons why he was so entitled. 421 Md. at 202-03, 26 A.3d at 348. At the end of the motion, the defendant stated that he was "requesting a Court appointed attorney and Change of Venue." *Northam*, 421 Md. at 203, 26 A.3d at 348. This Court concluded that the motion made by the defendant was

> sufficient only to alert the prosecutor and the trial court that [Northam] wanted a change of venue . . . and his vague request that he wanted a "Court appointed attorney," buried in the final sentence of the final paragraph of what was captioned and pled specifically and solely as a change of venue motion stands in stark contrast to other cases where [waiver of counsel] inquiries were mandated.

*Northam*, 421 Md. at 206, 26 A.2d at 350. Additionally, we reasoned that the defendant had opportunities both at the pretrial hearing as well as prior to trial to request a discharge of counsel, and because he failed to do so, the waiver of counsel rule was not implicated. *Northam*, 421 Md. at 207, 26 A.3d at 350-51.

In the present case, like in *Northam*, an alleged separate request for court action was embedded in a motion heralded as something else. Northam's request for "a Court appointed attorney" was embedded in a motion for a change of venue, just as Petitioner's request to

13

"have him evaluated" was embedded in a motion for mistrial. If anything, Petitioner's request was even more vague than Northam's request because it was made at the end of a long verbal exchange, rather than made at the end of a written motion where the trial judge could potentially go back and review what was requested.

Moreover, we concur with the Court of Special Appeals's reasoning when it recognized that "[h]ere, as in *Northam*, there were ample opportunities, before and during the trial, for defense counsel to bring clearly to the court's attention that appellant's competency to stand trial was an issue." If defense counsel indeed had intended to request a competency evaluation for his client, he would have, or should have, pursued such a motion as he did when he made multiple motions for a mistrial. In this vein, we think explanatory language from *Northam* is applicable here:

> [Petitioner] may not take advantage of an obscurely situate[d], undecided motion . . . . If the question is not of such importance to [defense counsel] that he remembers to request an answer, the court cannot be charged with screening previously decided motions to discern an unanswered sentence obscured by a plethora of unrelated issues. Nor can we permit such distended motions to be set as a trap for an unwary judge.

*Northam*, 421 Md. at 206-07, 26 A.3d at 350 (quoting *White v. State*, 23 Md. App. 151, 326 A.2d 219 (1974). The onus is on the defendant or defense counsel to make a request for a competency evaluation with sufficient clarity. In the interest of fairness, one cannot expect a trial judge to parse out each phrase uttered in a colloquy with defense counsel to determine what is being requested. Defense counsel made it clear that he was requesting a mistrial, but did not make it sufficiently clear that he was requesting a competency evaluation.

14

Furthermore, defense counsel did not pursue his request for a competency evaluation when it became clear that the trial judge was only aware of the motion for mistrial, despite ample opportunities to do so.

Petitioner, in effect, frames his argument as a "totality of the circumstances" analysis.[3] This type of analysis may be appropriate if Petitioner were arguing that the trial judge had a duty to *sua sponte* address his competency to stand trial,[4] but because he is not doing so, we believe this argument has no merit. Petitioner argues only that the trial judge's duty was triggered under § 3-104(a) by the motion of defense counsel, but then asserts that this motion was formed from several statements spoken throughout the trial. A sufficiently clear application for a court order does not involve piecing together various statements made over the course of a multi-day trial to form a coherent and clear request for court action.[5]

---

[3] Although Petitioner does not designate his argument as such, we believe this label is appropriate because Petitioner calls for this Court to consider statements made throughout the four-day trial to support the assertion that defense counsel made a proper request for a competency evaluation under § 3-104(a).

[4] A trial judge has a duty to raise the issue of a defendant's competency *sua sponte* if he or she has a bona fide doubt that the defendant is competent to stand trial. Because "[e]vidence relevant in determining whether there exists a bona fide doubt as to an accused's competence[] includes evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial[,]" *Wood v. State*, 436 Md. 276, 291, 81 A.3d 427, 436 (2013) (quotations and citations omitted), would be relevant under a totality of the circumstances analysis.

[5] We believe that the method for making a request for a competency determination is analogous to the method for making objections to rulings or orders during a criminal trial. The proper method for making objections is prescribed by Md. Rule 4-323(c), which states in pertinent part that "it is sufficient that a party, at the time the ruling or order is made or

(continued...)

15

Nevertheless, we believe it useful to point out facts before the trial judge that Petitioner failed to acknowledge, which shed further light on why § 3-104(a) was not triggered.

Petitioner's contention is that "defense counsel triggered the competency statute . . . when counsel [1] informed the court that he had trouble communicating with his client and that his client was unable to assist in his defense, [2] mentioned that there was 'something wrong' with his client[,] and [3] requested that his client be evaluated." Notwithstanding the fact that these statements were made over the course of the multi-day trial and a totality of the circumstances analysis is not proper to determine whether defense counsel made a motion under § 3-104(a), this argument fails to take into account several factors before the trial judge. Perhaps most importantly, the trial judge had the opportunity to observe Petitioner firsthand during a four-day trial. Over the course of the trial, Petitioner asked clarifying questions of the judge, including why his motion for judgment of acquittal was denied, and what it meant to impeach him. Following explanation by the judge, Petitioner stated that he understood in both instances. Petitioner, defense counsel, and the trial judge also engaged in a discussion regarding Petitioner's right to testify or not testify. Later, during Petitioner's

---

(...continued)
sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court." In the present case, defense counsel's "request" for an evaluation did not specifically make known the action defense counsel desired the court to make. Moreover, all the statements made by defense counsel prior to his vague request to "have him evaluated" did not occur at the time the request was sought. Because all but one of the statements made by defense counsel were not made at the time the ruling was sought, and because defense counsel did not make it known the action he desired the court to take, defense counsel's request was not sufficiently clear when analogized to the proper method for making an objection to a ruling or order.

16

testimony, he explained why he cried on the first day of trial. Rather than indicating incompetency, Petitioner's testimony reasonably shows his understanding of the court proceedings and gravity of the situation. Therefore, these circumstances omitted by Petitioner's argument shed further light on why the trial judge may not have been aware that defense counsel's request to "have him evaluated" was, in fact, a request for a competency determination. Because defense counsel never made a motion or request triggering the trial judge's duty to make a competency determination under § 3-104(a),[6] we shall affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS**.

---

[6] Respondent posits that despite this Court's holding in *Wood*, 436 Md. 276, 81 A.3d 427, an implicit finding of competency by the trial judge is acceptable in this situation if we conclude that § 3-104(a) was triggered. This is an incorrect reading of *Wood*. To reemphasize our conclusion in *Wood*, on review we do not take into consideration whether a judge made an implicit determination as to a defendant's competency once § 3-104(a) has been triggered. Once § 3-104(a) has been triggered, either upon motion of defendant, defense counsel, or because the trial judge has a bona fide doubt as to the defendant's competency, it is the trial judge's duty to "determine, on evidence presented on the record, whether the defendant is incompetent to stand trial."

17

Circuit Court for Baltimore City
Case No.: 110077027, 28, 29
Argued: January 14, 2014

IN THE COURT OF APPEALS OF
MARYLAND

No. 51

September Term, 2013

KIVI KENNEDY

v.

STATE OF MARYLAND

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Dissenting Opinion by Harrell, J.,
which Battaglia, J., joins.

Filed: February 21, 2014

I dissent. The Majority opinion concedes, as it must, that the threshold to trigger a trial judge's need to refer a criminal defendant for a mental competency evaluation is a low hurdle. Maj. slip op. at 12, citing *Roberts v.* State, 361 Md. 346, 365 n.14, 761 A.2d 885, 895 n.14 (2000) ("'[A]n extensive proffer is not necessary–indeed, a defendant merely needs to . . . allege incompetence in order to trigger the need for a competency evaluation.'"). That notwithstanding, the Majority faults Kennedy's defense counsel for not making his request known to the court with sufficient clarity. Maj. slip op. at 8. Although specificity is to be desired generally in gleaning a record to ascertain what relief (if any) a lawyer seeks for his or her client, I arrive at the view of this case that Kennedy's lawyer's efforts were sufficient to have put the trial judge on notice that Kennedy's mental competency was questioned and that the court should have understood that an evaluation of same was sought or, at a minimum, clarification was needed to understand better what Kennedy's lawyer wanted done. Looked at as a totality of circumstances, Kennedy's lawyer made the following points to the trial court:

- Kennedy refused (without reason) to meet with his lawyer on occasion.

- Kennedy refused (without reason) to attend court on one occasion.

- There were continuous communication impediments (apparently not of a foreign language barrier type) to Kennedy appearing to understand what his lawyer was saying to him.

- "There is something wrong with him [Kennedy]."

- "I [Kennedy's lawyer] haven't been able to talk [effectively] to him about the case."

- I would just ask the Court . . . have him evaluated."

Of course, much of the above was commingled with talk of a possible mistrial over the shoving incident in the courtroom. Nonetheless, it strikes me that it is not unreasonable for a judge to separate into compartments the two different concepts – a mistrial sought because of the courtroom shoving incident and the strongly-implied (at the least) request for a mental competency evaluation. To ignore the latter is merely to stick one's head in the sand beyond one's ears.

I would reverse the judgment and remand for further proceedings, to include a referral for mental competency evaluation of Kennedy.

Judge Battaglia authorizes me to state that she joins the views expressed in this opinion.